**Carl E. CUNNINGHAM, Co-Administrator of the Estate of Robert Lloyd Williams**

v.

**The METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, Tennessee.**

Supreme Court of Tennessee.

Feb. 7, 1972.

Peter H. Curry, Asst. Metro Atty., Nashville, for appellant.

Frank M. Newman, Donelson, A. P. Ottarson, Jr., Nashville, for appellee.

OPINION

ERBY L. JENKINS, Special Justice.

The complainant, Carl E. Cunningham, co-administrator of the estate of Robert Lloyd Williams, brought these actions in Part One of the Chancery Court of Davidson County seeking to compel the Metro-

politan Government of Nashville and Davidson County, hereinafter referred to as the defendant, to either satisfy two judgments rendered against the estate or to pay the estate the same amount, under the authority of Chapter 374, Public Acts of 1967, codified as § 6–640 T.C.A., which reads as follows:

"Whenever any employee member of a fire or police department of a municipal corporation or other political subdivision of the state of Tennessee shall be sued for damages arising out of the performance of his official duties and while engaged in the course of his employment by such governmental agency, such governmental agency shall be authorized and required to provide defense counsel for such employee in such suit and to indemnify him from any judgment rendered against him in such suit . . . ."

Robert Lloyd Williams had been employed by the defendant as a police officer prior to his death. He died as the result of injuries sustained in an automobile accident while in the course of his employment, leaving no estate.

Also injured in the accident were Patrick Meurer and Douglas Martin, both of whom brought suits against the estate of the deceased, Robert Lloyd Williams.

The co-administrator of the insolvent estate, Carl E. Cunningham, demanded that the Metropolitan Government defend the estate and be liable for the actions under the provisions of T.C.A. § 6–640, and the demand for defense was met.

Prior to the cases being tried, the defendant filed a petition for declaratory judgment with regard to its duties and obligations under said statute. A declaratory judgment was rendered by the Sixth Circuit Court of Nashville and Davidson County, Tennessee, which held that the defendant had the duty to defend the actions brought by Patrick Meurer and Douglas Martin, and in the event the defense of the suits was unsuccessful, the de-

fendant was required by the statute to indemnify the estate, "to the extent of any actual loss suffered by the estate."

Thereafter, the cases came on to be heard and judgments were rendered against the estate, which was insolvent. The defendant refused to pay the judgments and the complainant brought these actions to require the defendant to satisfy the judgments, or award the complainant judgments for the same. The chancellor ordered the defendant to pay the judgments.

Defendant has filed two assignments of error in its appeal to this Court:

First, the chancellor erred in ruling that the defendant's indemnification obligation under T.C.A. § 6–640 extended to the payment of outstanding judgments rendered against an insolvent estate which, by reason of its insolvency, did not incur any actual loss.

Second, the chancellor erred in ruling that the complainant was not estopped to bring these causes after complainant was a party to a declaratory judgment suit which resulted in a ruling that defendant's duty under T.C.A. § 6–640 was one of indemnification only for actual loss incurred by the estate.

The complainant appealed the chancellor's refusal to include interest on the judgments.

The sole issue in the two cases at Bar, which were consolidated for trial before this Court, is whether defendant, Metropolitan Government, must under T.C.A. § 6–640 indemnify an insolvent estate, which has suffered no monetary loss and will never do so as a result of this accident and the resulting judgments.

This Court, in Chattanooga v. Harris, 223 Tenn. 51, 442 S.W.2d 602 (1969), upheld the constitutional validity of T.C.A. § 6–640 as a "fringe benefit" such as pension plans and tenure acts.

The *Harris* case, supra, passed upon the constitutionality of the act in question. It

did not interpret the meaning of indemnification, the question which is now put before us by the complainant who seeks to enforce T.C.A. § 6–640, not as a benefit to the employee, but as insurance of liability to the general public.

There is a well-established distinction between an indemnity policy protecting against loss and a policy which protects against liability.

This Court has previously held that policies which contain the clearly expressed obligation to pay all liabilities incurred by the insured constitute insurance against liability. Gray v. Houck, 167 Tenn. 233, 68 S.W.2d 117 (1934); Associated Indemnity Corporation v. McAlexander, 168 Tenn. 424, 79 S.W.2d 556 (1935).

■ In T.C.A. § 6–640, however, the word "indemnify" was employed by the Legislature. Now what does "indemnify" mean as written in this Statute. The ordinary usage of indemnify as defined by Webster is "to secure against hurt, loss or damage—to make compensation to for incurred hurt, loss or damage."

This Court has ruled on a proposition similar to the case at Bar in Finley v. United States Casualty Company, 113 Tenn. 592, 83 S.W. 2 (1904). Although *Finley* dealt with a contract of insurance, the Court, in holding the policy to be one of indemnity against loss, used the following language, which we think is determinative of the case at Bar:

"The use of the word 'indemnify' shows the object and nature of the contract. It was to *reimburse or make whole* the assured against loss on account of such liability. There can be no reimbursement when there has been no loss." Finley, supra at 4, quoting Frye v. Bath Gas and Electric Company, 97 Me. 241, 54 A. 395 (1903). (emph. ours)

■ In the case at Bar, the complainant represents an insolvent estate. Judgments have been rendered against the estate. However, the estate, by reason of its insolvency, has not sustained any actual loss and is faced with no threat of loss by execution or otherwise, or embarrassment, or the threat of bankruptcy or garnishment.

If the Legislature had intended this statute to extend to the benefit of third parties, making it an insurance statute, it could easily have done so by using the word "pay" rather than "indemnify." To further show the intent of the Legislature in the enactment of the statute in question, it is followed in T.C.A. § 6–641,

"Liability insurance for employee protection.—All municipal corporations or other political subdivisions of the state of Tennessee are hereby authorized to contract at governmental expense for policies of liability insurance to protect employees in the course of their employment."

This clearly conveys what the legislature intended and we, therefore hold that an indemnity relationship has been created by T.C.A. § 6–640 for the sole benefit of policemen and firemen. Since complainant has incurred no loss due to its insolvency and none is expected, defendant is under no duty to indemnify the complainant.

The plaintiff, with some force and reason, in his brief states:

"Suppose we have a policeman under the circumstances in these cases and he owns a piece of property that he has bought for future increase in value. Does he, therefore, have to sell, perhaps on a depressed market, or have said property levied on and sold under execution before he can expect the City to protect him. The City in such case would not take into consideration the future value of the property and offer him only what the property brought."

"If the policeman (still alive) had nothing out of which the judgment could be made, he would be subject to garnish-

ment each month and make claim against the City."

This could be a logical argument, had the deceased lived and been faced with these problems, but does not apply in the instant case where no loss was suffered or is imminent or threatened. We can only interpret the Statute under the facts as presented. We cannot adjudicate a hypothetical question or give an advisory opinion. When that question becomes real and is presented to this Court, it will be passed upon.

Our decision makes it unnecessary to discuss the defendant's second assignment of error or complainant's assignment of error.

The Chancellor's decree is accordingly reversed.

DYER, C. J., and HUMPHREYS and McCANLESS, JJ., concur.

CRESON, J., dissenting.