**CITY OF MEMPHIS, Appellant,**

v.

**Robert R. ROBERTS, Appellee.**

Supreme Court of Tennessee.

Sept. 29, 1975.

Henry L. Klein, Memphis, for appellant.

Allen S. Blair, Hanover, Walsh, Barnes & Jalenak, Memphis, for appellee.

## OPINION

HENRY, Justice.

This civil action arises under § 6–640, T.C.A. and presents the single issue of whether a city fireman must satisfy a judgment rendered against him as a condition precedent to being indemnified by the municipality.

The Chancellor answered in the negative.

We affirm.

### I.

Final judgments, in the aggregate sum of $57,000.00, in an action at law, have been awarded against plaintiff-appellee, a fireman of the City of Memphis, in a suit for damages arising out of the performance of his official duties. Punitive damages were not involved. These judgments have not been satisfied, but demands have been made and the judgment creditors have threatened execution and garnishments. Plaintiff-appellee has made demand on the City of Memphis that these judgments be paid but the city has refused to do so. The Chancellor found that plaintiff-appellee was entitled to a judgment as a matter of law and ordered the city to pay all judgments.

Section 6–640, T.C.A.[1] reads in pertinent part as follows:

Whenever any county sheriff and his deputies or any employee member of a fire or police department of a municipal cor-

1. This is the section as it now appears, including the changes made by Chapter 78, Adj.S.1972, none of which have any bearing upon this action.

poration or other political subdivision of the state of Tennessee shall be sued for damages arising out of the performance of his official duties and while engaged in the course of his employment by such governmental agency, such governmental agency shall be authorized and required to provide defense counsel for such employee in such suit and to indemnify him from any judgment rendered against him in such suit; provided, however, that such indemnity shall not extend to any judgment for punitive damages or for damages arising out of any willful wrongdoing by said employee and; provided, further, that such municipal corporation or other political subdivision shall have notice of such suit.

Provided, however, that liability on behalf of any municipal corporation or political subdivision affected by §§ 6–640, 6–641 shall be limited to fifty thousand dollars ($50,000) for each person injured or property damaged from any one (1) accident and one hundred thousand dollars ($100,000) for all injuries and all property damage resulting from any one (1) accident.

It should be noted that this statute does not require a municipality to procure insurance coverage, although the ensuing section authorizes it to do so. The legislative scheme leaves it to the city to determine whether it will be insured or self-insured.

■ It is the position of the city that this city fireman may not recover until he has first paid the judgment rendered against him. It equates the statutory language, "to indemnify him from any judgment" with the indemnity provisions of insurance contracts and conventional agreements of indemnity, and would have us apply the general rule that where a contract contains provisions indemnifying against loss or damages, the indemnitee may not recover until he has paid the judgment.

The counter-insistence of appellee is that this is an indemnity against liability and a recovery may be had as soon as liability is legally imposed, i. e., when the judgment becomes final.

We do not accept either theory. We are dealing with a legislative enactment and our task is to determine the legislative intent.

This act came under the scrutiny of this Court in *City of Chattanooga v. Harris,* 223 Tenn. 51, 442 S.W.2d 602 (1969). The Court upheld the constitutionality of the statute, which at that time only applied to policemen and firemen. The Court considered the statute as providing a fringe benefit, declaring:

> In recognition of the necessity of providing such benefits, pension plans, tenure acts, retirement and vacation benefits have been adopted by individual cities by resolution, changes in charters, and often by acts of the Legislature. One method of approach in considering the instant statute is to consider it as providing another such fringe benefit. As it removes the burden from the individual of carrying insurance coverage for, and defending against, suits which arise out of his employment, it might even be said that it provides an indirect pay raise for such employee. At the very least it makes employment in these departments more attractive for both the veteran and the recruit, just as other "fringe benefits" do. 442 S.W.2d 606.

We are in accord with these views; however, the statute must also be viewed as providing a form of public insurance against theretofore immune activities. This statute unquestionably is a partial waiver of the traditional governmental immunity of cities and counties.

The closing portion of this case contains significant language. After recognizing the limitations on the use of public funds, the Court said:

> The direct public purpose in this case is effectuated by means of the city directly furnishing counsel, and by directly appro-

priating money either to buy *coverage to pay any judgment,* or by its paying *the judgment out of funds set aside for that purpose.* (Emphasis ours) 442 S.W.2d at 607.

It was again considered by this Court in *Cunningham v. Metropolitan Government of Nashville and Davidson County,* 476 S.W.2d 641 (Tenn.1972). The suit was instituted by the coadministrator of the insolvent estate of a deceased policeman seeking to compel the city to either satisfy judgments or pay the amount of the judgments to the estate. The Court held, *inter alia* that the estate, by reason of its insolvency had not sustained any actual loss and was faced with no threat of loss by execution, or otherwise. The Court held, in substance, that the statute created an indemnity relationship for the sole benefit of policemen and firemen, and applied the conventional rules relating to contracts of indemnity. Since the estate had sustained no loss and anticipated none, the city was under no duty to indemnify.

For reasons already pointed out, and as further discussed hereafter, we cannot accept this narrow construction of the statute. Indeed the Court severely limited its own opinion by the following language:

> The plaintiff, with some force and reason, in his brief states:
>
> > "Suppose we have a policeman under the circumstances in these cases and he owns a piece of property that he has bought for future increase in value. Does he, therefore have to sell, perhaps on a depressed market, or have said property levied on and sold under execution before he can expect the City to protect him. The City in such case would not take into consideration the future value of the property and offer him only what the property brought."
> >
> > "If the policeman (still alive) had nothing out of which the judgment could be made, he would be subject to garnishment each month and make claim against the City."

This could be a logical argument, had the deceased lived and been faced with these problems, but does not apply in the instant case where no loss was suffered or is imminent or threatened. We can only interpret the Statute under the facts as presented. We cannot adjudicate a hypothetical question or give an advisory opinion. When that question becomes real and is presented to this Court, it will be passed upon. 476 S.W.2d 643–644.

The question has now come.

What did the Legislature have in mind?

We have examined the tape recordings preserved in the State Library and Archives. Number S–196 contains the appropriate portions of the legislative debate conducted on this proposal on 18 May 1967, beginning at 2:35 P.M. State Senator Stanley Snodgrass, of Davidson County, the Senate Sponsor of this proposal, addressed his colleagues as follows:

> Mr. Speaker and Lady Anderson, Gentlemen of the Senate, this is a bill which at the outset I must say *affects the immunity of municipalities* and other governmental organizations. As you know, practically since the beginning of what we know as the common law, municipalities and certain other governmental units have had immunity from suit as a result of their employees committing negligent acts in the course of a governmental function. (Emphasis supplied).

After certain other proceedings, Senator Snodgrass stated:

> Mr. Speaker Gorrell, Lady Anderson, Members of the Senate: The amendment, in effect, simply makes applicable in this bill employees of the fire and police departments of municipalities and other governmental units. Quite frankly I ran into considerable opposition on this bill as originally drawn from municipal officials and various other people who are opposed to the removal of any immunity at all from municipalities or county governments so far as governmental function is

concerned. It occurred to me that there is such a need for some sort of legislation in this field that I will take second best and not take any at all, and this will then resolve itself to whether or not this Senate feels that when an employee of the fire department or police department of a municipality is sued by a citizen for damages for his negligent acts which have occurred in the course of his employment—whether or not the *city ought to have to pay damages to that person that's so injured.* Now, *as the law now stands, the city doesn't have to do that.* I can ask whether or not this ought not to be extended to state employees also but I submit to you there is a difference there. We do have a State Board of Claims, and you do have a right to file a petition before the State Board of Claims and seek compensation for injuries or other damages. But that isn't true so far as municipal government is concerned, in acts committed while in the performance of a governmental function. Let me just give you an illustration and I'll let each member of the Senate be the judge of what they want to do on this bill. If my little girl or your little boy or any other child or any adult walking down the street and from no negligence of his or her own, is run over by a fire engine— they have severe physical injuries, much expense; as the law now stands, there's no way that they can bring suit against the municipality which controls that public agency, that fire engine. They can sue the driver of the vehicle. Suppose they have just enormous damages and enormous expenses. That driver is not in any financial position to make restitution for his negligence. We are assuming now that this fire engine driver was negligent in injuring this person. I merely say that *that kind of law is just as archaic as it can be because when the philosophy of immunity, the King can do no wrong, was established back in the days when they didn't know what a vehicle was*; there was no great traffic and no great danger to human life crossing the street or doing any other act. But it's different today. I say to you gentlemen that *there ought to be some method by which the public can be protected* against the negligent acts of these employees. There's no reason why the municipality couldn't acquire liability insurance to cover this if they want to. If they are not able to do it, they could possibly be put in assigned risks of some kind, but there are ways in which they can protect the public. I submit to you that while this will *change the law substantially* that it's already been changed by court action in several jurisdictions, the sister state of Kentucky has abolished the idea of municipal immunity—governmental immunity. (Emphasis supplied).

We yield to this clear and unequivocal statement of the purpose of the law. We do not believe that the Legislature used the phraseology, "indemnify him from any judgment" in a technical, legalistic or esoteric sense, as opposed to its more mundane meaning of protecting against hurt, harm or loss.

We recoil at any suggestion that a policeman or fireman, or any other wage-earner during this era of inflation is required to submit to the hurt, humiliation and financial detriment of having his wages garnisheed, or of having to deplete his meager savings, or perhaps of having to sell his equity in his home in order to pay a judgment against him, and then, but only then, recover the money so paid. We cannot believe the Legislature intended any such absurd result. Section 6–640 T.C.A. was wholesome legislation, designed for the partial correction of a problem which exists without justification or excuse, and as Justice Harbison so eloquently stated in *Johnson v. Oman Construction Co.*, 519 S.W.2d 782, 786 (1974), is "at variance with modern concepts of justice."

We hold that it was the intent of § 6–640 T.C.A. that the governmental entity indemnify the employees enumerated therein by paying any judgment for compensatory

damages awarded against them for any negligence committed in the performance of their official duties.

The judgment of the Chancellor is Affirmed.

FONES, C. J., and COOPER, BROCK and HARBISON, JJ., concurring.