**Oliver DIXON, Respondent.**

v.

**Robert HOLDEN, Richard Hanson, Appellants.**

**No. WD 50863.**

Missouri Court of Appeals, Western District.

March 12, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 30, 1996.

Application to Transfer Denied June 25, 1996.

State Farm had no duty to defend Wilbur Ballmer.

Fairfax Jones, Terry Luekenhof, Casserly, Jones, Brittingham & Edwards, P.C., St. Louis, for respondent.

Jeremiah W. (Jay) Nixon, Atty. Gen., Robert L. Presson, Asst. Atty. Gen., Jefferson City, for appellant.

Before LOWENSTEIN, P.J., and ULRICH and HANNA, JJ.

1. The pertinent provisions of the sections follow:

**105.711. Legal expense fund created—officers, employees, agencies, certain health care providers covered, procedure—rules regarding contract procedures and documentation of care—certain claims, limitations—funds not transferable to general revenue—rules, procedure, review.**—1. There is hereby created a "State Legal Expense Fund" which shall consist of moneys appropriated to the fund by the general assembly and moneys otherwise credited to such fund pursuant to section 105.716.

2. Moneys in the state legal expense fund shall be available for the payment of any claim or any amount required by any final judgment rendered by a court of competent jurisdiction against:

(1) The state of Missouri, or any agency of the state, pursuant to section 537.600, RSMo;

(2) Any officer or employee of the state of Missouri or any agency of the state, including, without limitation, elected officials, appointees, members of state boards or commissions and members of the Missouri national guard upon conduct of such officer or employee arising out of and performed in connection with his or her official duties on behalf of the state, or any agency of the state, provided that moneys in this fund shall not be available for payment of claims made under chapter 287, RSMo....

4. All payments shall be made from the state legal expense fund by the commissioner of administration with the approval of the attorney general....

5. Except as provided in subsection 3 of this section, in the case of any claim or judgment that arises under sections 537.600 and 537.610, RSMo, against the state of Missouri, or an agency of the state, the aggregate of payments from the state legal expense fund and from any policy of insurance procured pursuant to the provisions of section 105.721 shall be limited to a maximum of eight hundred thousand dollars for all claims arising out of and judgments based upon the same act or acts alleged in a single cause, and shall not exceed one hundred thousand dollars for any one claimant. No payment shall be made from the state legal expense fund or any policy of insurance procured with state funds pursuant to section 105.721 unless and until the benefits provided to pay the claim by any other policy of liability insurance have been exhausted.

**105.716. Attorney general to handle claims, exceptions—certain departments to reimburse funds—prior to settlement, payment of certain legal expenses authorized, when.**—1. Any inves-

LOWENSTEIN, Judge.

This appeal concerns the ability of a judgment creditor to collect. from the state under the State Legal Expense Fund, § 105.711—105.726, RSMo (1994),[1] for the acts of two fellow state employees who violated the plaintiff's civil rights.

tigation, defense, negotiation, or compromise of any claim covered by sections 105.711 to 105.726 shall be conducted by the attorney general.

2. All persons and entities protected by the state legal expense fund shall cooperate with the attorneys conducting any investigation and preparing any defense under the provisions of section 105.711 to 105.726 by assisting such attorneys in all respects, including the making of settlements, the securing and giving of evidence, and the attending and obtaining witness to attend hearings and trials. Funds in the state legal expense fund shall not be used to pay claims and judgments against those persons and entities who do not cooperate as required by this subsection.

4. Notwithstanding the provisions of subsection 2 of section 105.711, funds in the state legal expense fund may be expended prior to the payment of any claim or any final judgment to pay costs of defense, including reasonable attorney's fees for retention of legal counsel, when the attorney general determines that a conflict exists or particular expertise is [Word "of" appears in original rolls] required, and also to pay for related legal expenses including medical examination fees, expert witness fees, court reporter expenses, travel costs and ancillary legal expenses incurred prior to the payment of a claim or any final judgment.

**105.721. Fund may be used to purchase insurance against liabilities—report—surety bonds, judicial acts or commissions.**—1. The commissioner of administration may, in his discretion, direct that any or all of the moneys appropriated to the state legal expense fund be expended to procure one or more policies of insurance to insure against all or any portion of the potential liabilities of the state of Missouri or its agencies, officers, and employees.

**105.726. Law, how construed.**—1. Nothing in sections 105.711 to 105.726 shall be construed to broaden the liability of the state of Missouri beyond the provisions of sections 537.600 to 537.610, RSMo, nor to abolish or waive any defense at law which might otherwise be available to any agency, officer or employee of the state of Missouri.

2. The creation·of the state legal expense fund and the payment therefrom of such amounts as may be necessary for the benefit of any person covered thereby are deemed necessary and proper public purposes for which funds of this state may be expended.

Respondent Oliver Dixon, a former trooper of the Missouri State Highway Patrol, sued two superior officers under 42 U.S.C. § 1983 (1982) in federal court for violating his constitutional rights under color of state law. Dixon sued the officers because they failed to take action after learning that Dixon's work phone at patrol headquarters was being wiretapped, despite General Orders requiring officers who learn of criminal acts to either make a report or instigate an investigation. The petition asserted that the failure to report arose out of the defendant troopers' official duties. The two officers, deceased at the time of the underlying federal suit, were represented by defendants ad litem. The underlying federal suit by Dixon versus the two troopers was settled by a consent judgment. *This suit* is by Dixon to collect from the Legal Expense Fund. The Circuit Court granted the plaintiff Dixon's motion for summary judgment and ordered one of the appellant-defendants, the Commissioner of Administration, to pay a sum from the Legal Expense Fund to satisfy the federal § 1983 judgment.

Early in the case, the defendants ad litem requested that the Attorney General defend them and that they receive indemnification pursuant to the Legal Expense Fund. Despite multiple requests by the defendants ad litem, the Attorney General did not represent or promise to indemnify them, explaining later that such action was "not in the state's interests."

Almost a year later, the two officers' estates, through the defendants ad litem, consented to the entry of judgment in federal court against them for $225,000 for the reason that they failed "after they knew or should have known of the existence of the illegal electronic surveillance of Plaintiff to take any action to stop said surveillance and

failed to report said surveillance to their supervisors...."

█ The settlement came after nine letters and assorted meetings with the attorney general's office set up at the insistence of the defendants ad litem. The deputy attorney general handling the case was told the civil rights suit could be settled for about $20,000 if the Fund would accept coverage. This request was denied. The defendants ad litem then advised settlement, and did in fact settle with Dixon for the greater amount, with the agreement that the troopers' estates would not be subject to garnishment or execution. The affidavit of one of the estates' attorneys, filed by the respondent in support of summary judgment, stated the attorney general was told the plaintiff (Dixon) insisted on a higher settlement amount ($225,000) if Dixon could not be assured of satisfaction by the Fund and had to collect from the estates. The affidavit also stated he felt the plaintiff could recover in excess of the settlement amount by trying the case.[2] The consent order in the federal suit restated that the consent was prompted by the troopers' failure to take steps to report the wiretapping.

As stated earlier, Dixon then made demand on the appellants Robert Holden, Treasurer of the State of Missouri, and Richard A. Hanson, Commissioner of Administration, to satisfy the federal judgment from the State Legal Expense Fund. The Attorney General refused to approve payment on the ground that the officers "were acting outside the scope of their duties."

Dixon, the judgment creditor, filed the action under review, a declaratory judgment suit against Holden and Hanson seeking payment of the judgment and costs from the Legal Expense Fund, alleging that all the elements necessary for payment under the

---

**2.** The doctrine of official immunity applies to public officials who act as agents of the state.

A public officer or employee who negligently performs a discretionary duty will be protected from tort liability, but the same person can be held liable for negligently performing a ministerial duty. *Jackson v. Wilson*, 581 S.W.2d 39, 42 (Mo.App.1979).

Ministerial functions are those that must be performed in a prescribed manner and without regard to personal judgment as to the propri-

ety of that function. Discretionary functions require the exercise of reason in their performance and go to the essence of governing. *Larabee v. City of Kansas City*, 697 S.W.2d 177 (Mo.App.1985).

In the case at bar, a legal duty existed for the Troopers to report the wiretaps—it was not a discretionary function. *See Dougan v. Rossville Drainage Dist.*, 243 Kan. 315, 757 P.2d 272 (1988).

statute had been met: that the federal court judgment was an "amount required by any final judgment rendered by a court of competent jurisdiction," as required by § 105.711.2; that the judgment against the Missouri State Highway Patrol officers was "against ... any officer or employee of the state of Missouri or any agency of the state," as required by § 105.711.2.(2); and that the officers' admitted violation of General Orders to stop or report the illegal wiretap to Dixon's telephone at patrol headquarters, was "conduct ... arising out of and performed in connection with his or her official duties on behalf of the state," as required by § 105.711.2.(2).

The circuit court agreed with and entered summary judgment for Dixon, holding that the Legal Expense Fund requirements had been met, and that, as a matter of law, the state was obligated to pay the federal judgment plus costs and attorney's fees.

Holden and Hanson, here represented by the Attorney General, raise four points of error which will be taken up in the following order: 1) Dixon, as a judgment creditor, lacked standing to invoke the Legal Expense Fund; 2) the court's order violated sovereign immunity; 3) Dixon failed to establish that the § 1983 action was based "upon conduct of ... state officer[s] or employee[s] arising out of and performed in connection with [their] official duties on behalf of the state, or any agency of the state"; and 4) summary judgment was improper because the affirmative defense (that the consent judgment was not entered in good faith) was not without merit as a matter of law.

■■■ Review of an appeal from the grant of summary judgment under Rule 74.04, as announced in *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376, 380, 383, 386 (Mo. banc 1993), is taken in a light most favorable to the party against whom judgment is entered. Facts in an affidavit supporting a party's motion are taken as true unless contradicted by the other side's response. *Id.* Review is as a matter of law and whether the moving party has established the right to judgment as a matter of law. *Id.* Affirmative defenses may not defeat a summary judgment motion when accompanied only by bare legal conclusions and unsupported by facts. *Id.*

## I. STANDING OF A JUDGMENT CREDITOR TO ACCESS THE FUND

This point, and this case, boils down to whether under the language of §§ 105.711–.726, the plaintiff Dixon has standing to collect his federal judgment from the Legal Expense Fund(Fund). The appellants question whether the Fund is even activated by a § 1983 suit. A broader question is whether the Fund's statutory scheme and language provide for the *indemnity* of state employees (meaning the state official or employee must first pay any or all of the judgment before being reimbursed, giving only the employee standing to judicially seek recompense from the Fund), or whether the Fund is *insurance* (which would allow a judgment creditor to go into court and collect without regard to any payment by the employee).

Many states have enacted laws defending state employees sued for conduct arising out of their state employment. Court determinations whether those statutes provide indemnity or insurance to state employees are compiled in John D. Kirby, Note, *Qualified Immunity For Civil Rights Violations: Refining The Standard*, 75 Cornell L.Rev. 462, 486 (1990).

The narrow question is most readily answered. A claim under 42 U.S.C. § 1983 is for a remedy for one deprived under color of state law of any rights secured by the Constitution. *Trujillo v. Bd. of County Comm'rs. of Santa Fe County*, 768 F.2d 1186, 1189 (10th Cir.1985). Some states have specific legislation covering the defense and payment of actions in federal court against state employees. *See, e.g.*, Iowa Code § 25A.22; Me. Rev. Stat. Ann. tit. 14, ch. 741, § 8112.2–A; Kansas Stat. Ann. § 75–6102 *et seq.* Courts have generally held that state employees are covered for § 1983 civil rights suits. *See, e.g. Town of Goshen v. Grange Mutual Ins. Co.*, 120 N.H. 915, 424 A.2d 822, 824–25 (1980); *City of Newark v. Hartford Accident & Indemn. Co.*, 134 N.J.Super. 537, 342 A.2d 513, 517 (1975); *Wiehagen v. Borough of North*

*Braddock*, 527 Pa. 517, 594 A.2d 303, 305–06 (1991).

■ This court rules that the statutory language of § 105.711.2 (providing that the money in the Fund "shall be available for the payment of any claim or any amount of any final judgment rendered by a court of competent jurisdiction against" ... "[a]ny ... employee ... upon conduct of such employee arising out of and performed in connection with his or her official duties on behalf of the state ....") covers a § 1983 suit. Here, the § 1983 suit alleges not only the federal language of under "color of law," but also the language of § 105.711.2(2). *See Graham v. Sauk Prairie Police Com'n*, 915 F.2d 1085, 1093 (7th Cir.1990).

The bigger question at the very heart of the case is the issue of standing. The appellants, who have been sued by the judgment creditor, Dixon, to pay the federal consent judgment, assert through their counsel, the attorney general, that the Missouri statutory scheme is one of indemnity, and under Missouri common law on indemnity the only party who could sue would be the employee (or, as here, their estates) for any amounts paid by them in satisfaction of the underlying suit. *Holiday Inns, Inc. v. Thirteen–Fifty Inv. Co.*, 714 S.W.2d 597, 601 (Mo.App.1986). Since the state employees have paid nothing toward the judgment, under true indemnity principles, the judgment creditor, Dixon, would not have any standing to bring the suit here on appeal. A cause of action for indemnity would have to be brought by the employees and even then would have accrued only after they made payment. *Bay Ridge Air Rights, Inc. v. State*, 44 N.Y.2d 49, 404 N.Y.S.2d 73, 74–76, 375 N.E.2d 29, 30–31 (1978). If, as Dixon asserts, the statute is really one of insurance for state employees, then, under insurance principles, the injured party could ultimately gain satisfaction from the insurer. *Holiday Inns, supra*, 714 S.W.2d at 602. The trial court looked at the language quoted above from § 105.711, found all its elements had been established, and declared the Fund had to pay the judgment against the state employees.

The appellants claim that the basic policy of the Fund is to promote governmental effi-ciency and to protect state business by protecting state employees. They assert that because the purpose is not to benefit third parties who have been injured by state employees, only the state employees, not third parties, may access the Fund through court action.

Before examining authority and declaring the Fund to provide either indemnification or insurance, some prefatory comments are in order. First of all, most states, including Missouri, have written their laws on defending and paying for employee lawsuits without stating the legislature's position on the gut question of whether the employee has to pay and seek reimbursement, or if the judgment creditor may collect directly from the fund. When states do use the words "indemnity" or "indemnification" in the laws, they still often provide for the defense procedure and payment of employee lawsuits in traditional "insurance" manners.

Second, most states, like Missouri, provide for the involvement of the attorney general from the beginning of suits against employees and make provisions similar to our § 105.716 for supplying the employee with counsel if the attorney general does not handle the case. Those same states give the attorney general great sway in compromising and settling claims. What makes it somewhat difficult here to construe whether a judgment creditor may seek recourse against the Fund is the self-imposed absence of the attorney general from the underlying suit and settlement.

## A. AUTHORITY FOR THE CONSTRUCTION THAT FUND PROVIDES INDEMNIFICATION OR THAT JUDGMENT CREDITORS LACK STANDING

The attorney general points to language in *State ex rel. Dep't of Natural Resources v. Roper*, 824 S.W.2d 901, 904 (Mo. banc 1992), that the Fund provides "in most situations the employee is entitled to representation by the state during the action and to indemnification by the state for any judgment collected from the employee." This language is dicta in an opinion which deals with the sole

issue of whether a case against a state agency must be brought in the county of its legal residence when there are additional defendants (state employees) who otherwise could be sued in the county of their residence under the general venue statute. The quoted portion is both dicta and taken out of context, and the court does not believe a passing description of the Fund is binding in the case at bar.

Similarly, in *Cates v. Webster,* 727 S.W.2d 901, 907–8 (Mo. banc 1987), a concurring/dissenting opinion by Justice Blackmar points toward a statutory purpose to protect the employee: "The State Legal Expense Fund exists to protect the covered employees from the burden and expense of civil litigation relating to the performance of their duties. The purposes are apparent. A competent employee, who is in demand elsewhere, may be unwilling to work for the state without protection. Those who do serve may be unwilling to take necessary risks for fear of litigation." As in the *Roper* quote, this language appears in the context of a different issue from the case at bar (whether the person in question was truly a state employee). And although some courts, such as the *Miera* court, *infra,* have said a purpose to protect the employee means judgment creditors have no standing, the *Cates* court did not even remotely address the issue.

The state of Minnesota has directly addressed the issue in question. In *Johnson v. Miera,* 433 N.W.2d 926 (Minn.App.1989), Johnson had previously obtained a judgment against state employee Miera and sought a declaratory judgment to collect from the state without Miera's having requested indemnification from the state. Minnesota's indemnification statute called for the state to defend and indemnify any employee for attorneys' fees and judgments reasonably incurred in a suit arising out of an act during and within state employment, and the statute required the employee to cooperate with the defense of the claim. The court concluded the purpose of the statute was to benefit the state employee, not the judgment creditor, and upheld the dismissal of the judgment creditor's suit for lack of standing. *Id. at* 927.

A Wyoming court, although enmeshed in an analysis of the relationship between a workers' compensation section and a Governmental Claims Act, in *Hamlin v. Transcon Lines,* 697 P.2d 606, 614 (Wyo.1985), held the victim did not have the ability as a purported third-party beneficiary to sue when the statute was for indemnity.

Turning to Tennessee, *Cunningham v. Metro. Gov't of Nashville and Davidson County,* 476 S.W.2d 641 (Tenn.1972), served as the subject annotation in Philip E. Hassman, Annotation, *Validity and Construction of Statute Authorizing or Requiring Governmental Unit to Indemnify Public Officer or Employee for Liability Arising Out of Performance of Public Duties,* 71 A.L.R. 3rd 90 (1976). Cunningham was an administrator of the insolvent estate of a police officer. The suit was to satisfy judgments rendered against the estate, but unsatisfied. (Earlier, the estate had made demand for a defense, and that demand was met. 476 S.W.2d at 642). Presented with the sole issue as to whether the government must "indemnify an insolvent estate, which has suffered no monetary loss and will never do so as a result of this accident and the resulting judgments," the court noted "indemnify" is defined as "to make compensation to for incurred hurt, loss or damage," and means to reimburse or make whole the assured for loss. *Id.* at 643. The court noted that "[t]here can be no reimbursement when there has been no loss." *Id.* In ruling for the government, the court said, "If the Legislature had intended this statute to extend to the benefit of third parties, making it an insurance statute, it could easily have done so by using the word 'pay' rather than 'indemnify'." *Id.* The Cunningham court left open for another day the question of what would be the result if the policeman had been alive and had owned property subject to execution, or if the judgment could have been satisfied by paycheck garnishments. *Id.* at 643–44.

## B. AUTHORITY FOR THE CONSTRUCTION THAT THE FUND PROVIDES INSURANCE COVERAGE OR GIVES STANDING TO JUDGMENT CREDITORS

The rationale expressed in *Cunningham, supra,* was totally undermined in the later

case of *City of Memphis v. Roberts,* 528 S.W.2d 201 (Tenn.1975), where a judgment was obtained against a fireman who was not insolvent, but against whom demands had been made and not paid despite threats of garnishment and execution. *Id.* at 202. The applicable statute required when a fire fighter was sued for performance of official duties in the course of employment by the agency the agency was required to provide counsel, "and to indemnify him from any judgment rendered against him in such suit." *Id.* at 203. Like the Missouri Fund provides, the agency had the ability to self insure or procure insurance coverage. The court said the word "indemnify" should not be used in the technical and legalistic sense, and interpreted the statute to require the government to pay judgments against the employee committed in the performance of their duties. *Id.* at 205–06. The court said, "[w]e recoil at any suggestion that a policeman or fireman, or any other wage-earner during this era of inflation is required to submit to the hurt, humiliation and financial detriment of having his wages garnisheed or of having to deplete his meager savings, or perhaps of having to sell his equity in his home in order to pay a judgment against him, and then, but only then, recover the money so paid. We cannot believe the Legislature intended any such absurd result." *Id.* at 205.

*Banks v. City of Mason,* 541 S.W.2d 143, 144–45 (Tenn.1976), followed the reasoning of *Roberts* for a policeman who attempted to discharge the obligation after the city had refused. The court said the statute created a fringe benefit for employees and provided a form of public insurance.

Under a Wisconsin statute, similar to Missouri's, in which the government agreed to "pay judgments taken against officers" in an official capacity or as an individual for acts while carrying out duties as an employee, the court allowed plaintiffs to sue the city for whom the officer worked. The Supreme Court of the state construed the act "as allowing a direct action against the indemnitor by the person in whose favor a judgment against the indemnitee was entered." *Bell v. City of Milwaukee,* 536 F.Supp. 462, 476 (1982).

Alabama Code S. 41–9–74(a) (1981 Supp.) provides as part of the consideration of employment of corrections officers that the government "shall pay all final judgments awarded ... for acts arising out of and performed in connection with ... official duties...." The Eleventh Circuit, construing the Alabama statute, in *Williams v. Bennett,* 689 F.2d 1370, 1377 (11th Cir.1982), *cert. denied,* 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983), said the "language suggests that the statute was designed to be an employment benefit, analogous to liability insurance, for any Alabama correctional employee who may be sued individually for acts arising in the course of employment." With respect to the statute's language (similar to Missouri's 105.711.5, "No payment shall be made from the ... fund or any policy of insurance ... unless and until the benefits provided to pay the claim by any other policy of liability insurance have been exhausted"), the court said the statute provided an "insurance supplement" for employees and perhaps afforded some measure of relief to plaintiffs required to sue those who might otherwise be judgment proof individuals. *Id.* at 1378.

In a suit by a state employee in Vermont injured by the negligence of co-workers, the Court said the Vermont statute obligating the state to defend and pay up to $100,000 for acts performed in an official capacity did not make the suit into one against the state. "The state does not assume direct liability for the acts of an employee; rather its status is analogous to that of an insurer." *Libercent v. Aldrich,* 149 Vt. 76, 539 A.2d 981, 985 (1987).

## C. RULING ON POINT I

 The court and legal scholars could forever debate the construction of the Fund language and whether Dixon has standing in this case. The Fund itself does not use the terms "insurance" or "indemnity." However, several aspects of the Fund lead to the conclusion that the law is insurance, or not strictly indemnity:

First, nothing in the Fund language indicates that it provides for indemnification. No form of the word "indemnity" is used. Instead, the plain language only indicates

that the Fund will pay "any amount required by any final judgment," without mention of any requirement that the employee pay first. If the Fund was only intended to reimburse up to the amount that an employee was liable, it would certainly not use this plain language.

Second, besides covering judgments against employees, the Fund also covers judgments against the state. The Fund covers claims against the state much like insurance, under § 105.711.2(1). The provision at issue covering employees is § 105.711.2(2). It would seem odd indeed to combine, in one statutory section, a common methodology for payment of claims against the state and a similar method of payment of cases against employees, but to denominate the latter indemnity.[3]

Third, the provision of a mechanism to settle and pay "*claims*" against the state and individual employees sounds like insurance, and without further explanation, makes difficult the conclusion that "claims" may be settled and paid by the state through the Fund, but that "judgments" against individuals must be paid by the employees for there to be a recovery by them through the Fund. Similarly, the provisions of the Fund that mandate that the attorney general conduct settlements and defend employees militate in favor of a Fund that pays out regardless of the employee's payment to the plaintiff. Were it otherwise, a convoluted scheme would occur whereby the attorney general could settle a claim and bind the employee to pay it before reimbursement could occur.

The question before this court is really a policy matter, and the court here today refuses to read into a statute which seeks to protect and help defend and pay judgments against its employees, the determination that the state would have to pay only such amount as the employee could afford to pay to the injured party. "[T]his would create a circuity of action and the purpose of the statute would be defeated." *Richichi v. Chicago,* 49 Ill.App.2d 320, 199 N.E.2d 652, 658 (1964). Forcing the state employee to go into court

on a regular basis for indemnity of wages garnished and applied to the judgment is repugnant to the concept of the Fund law. There is no stipulation in the Fund law that a policeman or any state employee has to first pay a judgment to establish the state's liability. *See Richichi,* 199 N.E.2d at 657. Public policy and sensitivity toward state employees should prevent repeated payments and repeated attempts at collection. The Fund's insurance scheme will "in effect facilitate the bringing of actions against erring public servants, because the plaintiff is assured that the financial resources of the entity will stand behind the judgment," and the indirect liability will cause the entity "to exercise an additional degree of caution in the hiring and supervision of employees whose functions carry a greater risk of potential liability." *Williams v. Horvath,* 16 Cal.3d 834, 129 Cal. Rptr. 453, 462, 548 P.2d 1125, 1134 (1976).

As did the Tennessee court in *Memphis v. Roberts, supra,* this court recoils at the idea that state employees must be humiliated by repeated actions as collections of judgments against them. There is no benefit for a judicial declaration of a policy of true indemnification, unless the legislature so declares. The better policy is to allow the judgment creditor to seek satisfaction, and have the state either through self-insurance or from a policy procured for this purpose, pay the judgment. If it is the true intent of this statute to protect state employees as much as possible from the rigors of defending lawsuits borne out of state duties, then it defeats that purpose to have the employee pay from his or her pocket, or from the estate's assets, before being made whole. By enacting § 105.711 *et seq.,* the state has chosen to defend employees and pay on "any claim" or "any final judgment" rendered against "any employee of the state" upon "conduct arising out of, and performed in connection with official duties . . . ." The state's obligation includes this case. The point is denied.

## II. SOVEREIGN IMMUNITY

The respondents argue that the present suit violates sovereign immunity. They point

---

**3.** Section 105.711.2 actually combines claims and judgments against (1) the state (2) employees and officers (3) various health providers, and (4) staff employed by the juvenile division of any judicial circuit.

to § 105.726, which states this law shall not be construed to broaden the provisions of §§ 537.600 and .610, the only exceptions to sovereign immunity. This court agrees that the Legal Expense Fund should not broaden the state's liability for tort.

■ However, the law under scrutiny here does not expand the state's tort liability. The Fund is merely a voluntary assumption of defense and payment of judgments or claims against state employee sued for their conduct arising out of and performed in connection with official duties on behalf of the state. The doctrine of sovereign immunity is not an issue in this case. *See Libercent v. Aldrich, supra,* 149 Vt. 76, 539 A.2d 981 (1987).

The underlying suit was not versus the state, but two of its employees. Missouri, like many other states, has chosen by statute to defend and pay judgments. The doctrine of sovereign immunity is not altered nor implicated by this case or this opinion.

### III.

■ The next contention is that the conduct of the two troopers did not arise out of and in connection with their official duties on behalf of the state. The attorney general contends this section, by implication, requires "the performance of these duties should be 'in good faith'." There is utterly no reason to read this requirement into the statute, and this contention is rejected out of hand.

■ The attorney general also argues that the treasurer and commissioner of administration were not parties to the § 1983 federal suit and therefore could not be bound here. This contention flies in the face of the fact that this suit is based on the Fund law which sets up a mechanism for the government to pay judgments of state employees. The state's liability and responsibility here is under the portion of the Legal Expense Fund which contemplates suits against state employees. The employees' admitted conduct is undisputed and cannot now be disputed in this suit by the state. Contrary to the Patrol Code of Conduct, the employees knew of·and did not report an illegal wire tap of a fellow employee's phone at the headquarters of the State Highway Patrol.

■ Further rejected is the contention that the federal suit violated Amendment XI to the United States Constitution which states:

The judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state.

This argument, which might have best been presented in the federal suit, still has no merit. *See Williams v. Bennett, supra,* 689 F.2d at 1376–78.

### IV.

■ The final argument by respondents is that the consent judgment was the result of collusion between the defendants ad litem and the plaintiff-respondent Dixon. In an affirmative defense in the trial court, they argued the amount was too high and certainly greater than the $20,000 figure which would have settled the matter had the state agreed to pay the judgment.

The circumstances the defendants ad litem faced in federal court included fending off Dixon and the likelihood of a large verdict with one hand, and with the other, making continued supplications to the attorney general for representation and declaration. Any judgment or settlement could have been satisfied under statute by the state and the attorney general, so neither the trial court nor this court could say as a matter of law that respondents sustained the affirmative defense of collusion between the defendants ad litem and Dixon. The allegation of collusion or lack of good faith was not self-proving, and being conclusory was not sufficient to abort entry of summary judgment. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 383 (Mo. banc 1993).

\* \* \*

A postscript on this point is in order concerning the attorney general's refusal to settle the claims for $20,000 or to defend the

two state employees. Under the same reasoning, had the § 1983 suit been tried and a verdict been rendered for the amount of the settlement, it could be assumed the state would have still refused to pay, relying on the assertion the Fund was for indemnity, or that the quality of the defense of the Troopers was inadequate. Without reiterating the Fund language, the statute provides that the compromise and settlement of employee suits are covered by the Fund. It is not reasonable to assume that where the case is concluded by settlement the employee must first pay the amount to be indemnified by the Fund.

## ATTORNEY REPRESENTATION

The court feels compelled to comment upon the statutory scheme for bringing the attorney general or outside counsel in to defend a state employee covered by § 105.711. The attorney general's duties in carrying out the purposes of the Fund are extensive. Section 105.716.1 defines the attorney general's duty as employee's attorney to investigate, conduct a defense, and handle settlements. Section 105.711.4 requires the attorney general's approval of all payments made from the Fund.

When, as here, the attorney general chooses not to defend the state employee who is sued, nor be involved even under a reservation of right, and the facts disclose the employee and the employee's actions were covered by the statute, then the Fund's policy to protect and defend state employees goes by the wayside. For example, as happened in this case, privately retained counsel could be forced to pursue settlement with no promise of state help, or conversely could be forced to proceed to trial, exposing the employee or the estate to great fees and staggering judgment amounts.

The flip side is the attorney general must be allowed the ability to opt out of the defense of cases and save limited staff resources, where the requisite facts for state involvement do not or will not ever be met.

The role and scope of the attorney general's obligations to get in a case and defend must be more clearly defined.

Based on this case, several questions under § 105.716 come to mind.

1) Will conduct by the employee resulting in punitive damages be defended?
2) What if there is criminal conduct by the employee?
3) Where the defense of official immunity will trump the plaintiff's suit, must the attorney general still defend?
4) Where the conduct appears to be involved in a ministerial function, and no cloak of official immunity looks possible, may the attorney general ever opt out and prevent the state from ever becoming involved in the suit?

Though purely dicta, the better practice would be for the attorney general to err on the side of entering too many defenses rather than sitting out of the suit and later having to come into a suit in the posture of the case at bar.

The better practice would be to interpret § 105.716.1, and the language that "any defense ... of any claim ... shall be conducted by the attorney general ...", as allowing little discretion to refuse to defend an employee, and to treat "the State's role, in reviewing the request to defend ... much like that of an insurer reviewing a complaint to determine if a defense must be provided." *Hassan v. Fraccola*, 851 F.2d 602, 604 (2nd Cir.1988); *See also Giordano v. O'Neill*, 131 A.D.2d 722, 517 N.Y.S.2d 41, 42 (1987); *Bell v. City of Milwaukee*, 536 F.Supp. at 476.

To this end, the following suggestions are made to the general assembly:

1) Provide for investigation by the attorney general following his or her being informed of the claim. *See Cunliffe v. Pomplin*, 102 Or.App. 403, 794 P.2d 816, 817–18 (1990); Vt. Stat. Ann. tit. 3, Ch. 29, § 1102(a)(1996).
2) Provide for some type of independent adjudication as between the employee and the attorney general's office prior to a decision on defense. *See* Cal. Code § 825.6 (West 1996); Vt. Stat. Ann. § 1102(c).
3) During the period of investigation or hearing, the attorney general shall take all responsible steps to protect the in-

terests of the employee. *See* VT. STAT. ANN. § 1102(d).

4) Where the attorney general still has good faith questions as to coverage, he may participate in the trial on behalf of the employee-defendant on a reservation of right basis. *See* CAL. CODE § 825(a); *Bell v. Milwaukee*, 536 F.Supp. at 476 n. 6.

5) Provide literally for a pure form of indemnification to the employee who has paid private counsel for a defense that should have been provided under statute by the attorney general. *Gill v. State Accident Ins. Fund Corp.*, 314 Or. 719, 842 P.2d 402 (1992).

\* \* \*

The entire statute is not a model of clarity. The plain language of the statute points to at least three purposes. First, § 105.716 provides for a legal defense of employees covered by the Fund. Second, § 105.721 provides for the purchase of insurance for the state of Missouri, its agencies, officers, and employees. Third, § 105.711 provides for the payment of judgments against various employees and the state under § 537.600.

All of these statutory purposes seem to flow from one policy—to promote governmental efficiency and protect state business by protecting employees. The policy is admirable, but the statute could be clearer.

If the legislature does intend to make the Fund true indemnity, or give the state flexibility as to paying claims or judgments against the covered individuals, then it is directed to § 17 subdivision 5 of the Public Officers Law of New York, which says "[t]he benefits of this section shall inure only to … employees … and shall not enlarge … the rights of any other party…." *Olmstead v. Britton*, 48 A.D.2d 536, 370 N.Y.S.2d 269, 272 (1975). The legislature may also wish to note SOUTH DAKOTA CODIFIED LAWS ANN. Tit. 3 ch. 3–19–1, 3–19–2, and 3–19–3, which allow the public entity to elect any of the following: 1) to indemnify for court costs, 2) to pay or indemnify the employee for attorney fees, 3)

to pay or indemnify judgments, or 4) to pay or indemnify for settlements.

The judgment is affirmed.

All concur.