

# In the Missouri Court of Appeals
## Western District

| | |
|---|---|
| STATE ex rel: AMANDA PRYOR, )<br>Appellant, )<br>v. )<br> )<br>DOUGLAS NELSON and CHRIS )<br>KOSTER, )<br>Respondents. ) | WD77494<br><br>FILED: December 9, 2014 |

## APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
### THE HONORABLE PATRICIA S. JOYCE, JUDGE

### BEFORE DIVISION ONE: THOMAS H. NEWTON, PRESIDING JUDGE,
### LISA WHITE HARDWICK AND ANTHONY REX GABBERT, JUDGES

Amanda Pryor, as next friend for the four minor children of Zachary Snyder, appeals the circuit court's judgment dismissing her petition for a writ of mandamus against Douglas E. Nelson, the Commissioner of the Office of Administration of the State of Missouri, and Chris Koster, the Attorney General of the State of Missouri (collectively, "Respondents"). Pryor sought the writ to compel Respondents to issue checks from the State Legal Expense Fund ("the Fund") to satisfy a judgment entered by the United States District Court for the Eastern District of Missouri ("federal court") against a Department of Corrections employee for Snyder's

wrongful death. On appeal, Pryor contends she stated a claim for mandamus relief. For reasons explained herein, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

Steven Julian was a Department of Corrections employee with the Fugitive Apprehension Unit when he attempted to apprehend Snyder, a parolee who was subject to electronic monitoring and had missed a curfew. In the course of returning Snyder to custody, Julian shot Snyder, who was unarmed, in the back, killing him.

Pryor, as next friend for Snyder's minor children, filed suit against Julian in federal court. The Attorney General provided Julian's defense, and Julian cooperated in his defense. The jury returned a verdict of $1 million in favor of the minor children and against Julian. The clerk of the court memorialized the jury's verdict in a judgment on August 15, 2012. After ruling on the parties' post-trial motions, the federal court entered a judgment on the verdict on August 8, 2013. In the judgment, the federal court apportioned the $1 million verdict between the minor children and ordered the children's attorney's fees paid out of the judgment. On August 13, 2013, Pryor made demand on Respondents, seeking the issuance of checks from the Fund to satisfy the judgment.

When Respondents failed to pay the judgment within ten days, Pryor filed a petition for a writ of mandamus in the Cole County Circuit Court. In her petition, Pryor alleged that, because the Attorney General had tendered a defense on behalf of Julian, a State employee, for conduct arising out of and performed in connection

2

with his duties, the State was required under Section 105.711, RSMo Cum. Supp. 2013,[1] to satisfy the verdict with money from the Fund. Pryor requested a preliminary order in mandamus commanding Respondents to file an answer and a judgment compelling Respondents "to complete the ministerial act of issuing payments against the [Fund]" on behalf of the minor children to satisfy the federal court's judgment.

The court entered a preliminary order in mandamus and directed Respondents to file a responsive pleading to Pryor's petition. Respondents filed an answer in which they asserted, among other things, that Julian shot and killed Snyder only after he "perceived a sudden, threatening motion from Snyder" and that the Attorney General had filed an appeal from the federal court's judgment.

Respondents also filed a motion to dismiss or, in the alternative, for judgment on the pleadings. They asserted that the petition failed to state a claim for mandamus relief because under Section 105.711.2, money in the Fund is available to pay only amounts required by "any final judgment." Respondents noted that the petition alleged only that the federal court entered a "judgment" and ignored the fact that that the Attorney General had filed an appeal from that judgment. Alternatively, Respondents argued that they were entitled to judgment on the pleadings because they alleged in their answer that the Attorney General had appealed the federal court's judgment, thereby demonstrating that the judgment was not final.

---

[1] All statutory references are to the Revised Statutes of Missouri 2000, as updated by the 2013 Cumulative Supplement.

In response, Pryor asserted that the finality of the federal court's judgment was not affected by the filing of a notice of appeal. Pryor argued that, in the absence of an automatic stay or proof of the posting of a supersedeas bond, she was entitled to execute on the judgment by having Respondents issue checks from the Fund.[2]

On April 4, 2014, the circuit court entered its judgment dismissing Pryor's petition for failure to state a claim. Pryor appeals.[3]

## STANDARD OF REVIEW

Appellate review of a dismissal for failure to state a claim is *de novo*. *Lynch v. Lynch*, 260 S.W.3d 834, 836 (Mo. banc 2008). We will "affirm the dismissal if it can be sustained on any ground supported by the motion to dismiss." *Beck v. Fleming*, 165 S.W.3d 156, 158 (Mo. banc 2005) (footnote omitted). We accept the allegations in the petition as true, and "no attempt is made to weigh any facts alleged as to whether they are credible or persuasive." *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 101 (Mo. banc 2010). Indeed, we construe the petition liberally and accord it "'all reasonable inferences deducible from the facts stated.'" *Lakeridge Enters., Inc. v. Knox*, 311 S.W.3d 268, 271 (Mo. App. 2010) (citation

---

[2] The federal court did, in fact, grant a stay. In a letter brief submitted after oral argument, Respondents provided this court, at our request, a copy of the federal court's order, entered February 20, 2014, granting Julian's motion to stay execution of the judgment pending resolution of his appeal and denying the minor children's motion for a supersedeas bond. The State does not argue for affirmance based on the federal court's stay of execution.

[3] Although generally a party who is denied relief by extraordinary writ in a lower court must file an original application for relief in a higher court, "[a]n appeal will lie from the denial of a writ petition when a lower court has issued a preliminary order in mandamus but then denies a permanent writ." *U.S. Dep't of Veterans Affairs v. Boresi*, 396 S.W.3d 356, 358 (Mo. banc 2013).

4

omitted). "The petition is reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action or of a cause that might be adopted in that case." *Keveney*, 304 S.W.3d at 101.

**ANALYSIS**

In her sole point on appeal, Pryor contends the court erred in dismissing her petition for a writ of mandamus compelling Respondents to issue checks from the Fund to satisfy the federal court's judgment. "Mandamus will lie only when there is a clear, unequivocal, specific right to be enforced." *State ex rel. Mo. Growth Ass'n v. State Tax Comm'n*, 998 S.W.2d 786, 788 (Mo. banc 1999). This is because the purpose of mandamus "is to execute, not adjudicate." *Id*. If the right is doubtful, mandamus is not the appropriate remedy. *Jones v. Jackson Co. Circuit Court*, 162 S.W.3d 53, 58 (Mo. App. 2005).

In determining "whether the right to mandamus is clearly established and presently existing," we examine the statute under which the petitioner asserts the right. *Jones v. Carnahan*, 965 S.W.2d 209, 213 (Mo. App. 1998). In this case, Pryor asserts her claim under Section 105.711.2. This statute provides, in pertinent part, that "[m]oneys in the state legal expense fund shall be available for the payment of any claim or any amount required by any final judgment rendered by a court of competent jurisdiction" against an employee of the State or a State agency for conduct arising out of and performed in connection with the employee's official duties. § 105.711.2(2).

5

The issue in this case is whether Pryor's petition alleged facts showing that the federal court's judgment was a "final judgment" requiring payment by the Fund. Pryor argues that, because the judgment was final for purposes of appeal, it was a "final judgment" for all purposes, including the application of Section 105.711.2.

A judgment, however, "may be characterized as final in one sense or for some purposes and not in another sense or for other purposes." *State ex rel. Berbiglia, Inc. v. Randall*, 423 S.W.2d 765, 768 (Mo. banc 1968). In *Berbiglia*, the Supreme Court explained that, while the finality of a judgment most often arises in the context of its appealability, a judgment that is final for purposes of appeal is not necessarily final in other contexts:

> For example, a judgment or decree final for the purposes of appeal is most certainly not final in the sense that it is conclusive on the parties until the losing party has failed to appeal within the time allowed by law, or, having appealed, until the appeal is determined; and, although it is not final in that sense because an appeal is pending, yet during that period it may be final in the sense that the court from which the appeal was taken has exhausted its authority and is without jurisdiction to change, vacate or modify the judgment, or to enter another judgment.

*Id*. Appealability was not at issue in *Berbiglia*, nor is it at issue in this case. The question in *Berbiglia* was whether a judgment was final in the sense that the circuit court entering the judgment no longer had jurisdiction to change, vacate, or modify the judgment, or to enter another judgment. *Id*. at 769. That is not the issue here, as we are not concerned with the extent of the federal court's continuing jurisdiction over its judgment.

6

Additionally, the finality of a judgment can arise in the context of *res judicata* or collateral estoppel, the application of which requires a "final judgment" on the merits. *Robin Farms, Inc. v. Beeler*, 991 S.W.2d 182, 186 (Mo. App. 1999) (holding that, when an appellate court vacates a lower court's judgment, the lower court's judgment is no longer considered a "final judgment" for purposes of claim or issue preclusion). The purpose of *res judicata* and collateral estoppel is to prevent the relitigation of claims and issues unambiguously decided in a prior proceeding. *Gamble v. Browning*, 379 S.W.3d 194, 198 (Mo. App. 2012). Because relitigation is not a concern of Section 105.711, a judgment considered final for preclusion purposes is not necessarily a "final judgment" mandating payment from the Fund.

The finality of a judgment also can arise in a contractual context, such as the obligation of a liability insurer to pay a judgment under an insurance policy. This court has held that, where an insurance policy requires a "final judgment" of the insured's liability before payment, the judgment is not final until after the appeal period has expired or, if an appeal is taken, until after the appeal is determined. *Joyce v. Central Sur. & Ins. Corp.*, 321 S.W.2d 272, 278-79 (Mo. App. 1959). We recognize that the Fund is not insurance, *Kesterson v. Wallut*, 157 S.W.3d 675, 684 (Mo. App. 2004); however, the Fund's payment of judgment on behalf of a State employee is similar to an insurance company's payment of a judgment on behalf of its insured.

To determine what constitutes a "final judgment" for purposes of requiring payment from the Fund under Section 105.711.2, we must apply the rules of statutory interpretation. "The primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute." *P.L.S. ex rel. Shelton v. Koster*, 360 S.W.3d 805, 808 (Mo. App. 2011). We also determine the legislature's intent "by considering the entire act and its purposes, and by seeking to avoid unjust, absurd, unreasonable, confiscatory or oppressive results." *State ex rel. Killingsworth v. George*, 168 S.W.3d 621, 623 (Mo. App. 2005).

While the plain language of Section 105.711.2 does not indicate precisely what the legislature intended by the term "final judgment," we can ascertain the legislature's intent from the act as a whole and its purposes. In *Dixon v. Holden*, 923 S.W.2d 370, 381 (Mo. App. 1996), this court noted that there are three purposes of the act that created the Fund. These purposes are: (1) to provide "for a legal defense of employees covered by the Fund," Section 105.716; (2) to provide "for the purchase of insurance for the State of Missouri, its agencies, officers, and employees, Section 105.721; and (3) to provide "for the payment of judgments against various employees and the State," Section 105.711. *Dixon*, 923 S.W.2d at 381. "All of these statutory purposes seem to flow from one policy--to promote governmental efficiency and protect state business by protecting employees." *Id*.

8

In light of the act's policy of promoting governmental efficiency and protecting state business by protecting employees, we do not believe that the August 15, 2012 judgment, entered by the federal court clerk immediately following the jury's verdict, was final for purposes of requiring payment from the Fund. If such a judgment were considered final, then a plaintiff could collect from the Fund even while a motion for new trial or a renewed motion for judgment as a matter of law was pending. Allowing collection from the Fund while post-trial motions that could change the result of the trial are pending would be contrary to governmental efficiency.

Similarly, we do not believe that the August 8, 2013 judgment, entered by the federal court after it ruled on the post-trial motions, was final for purposes of mandating payment from the Fund. The Attorney General appealed from that judgment, and that appeal is pending. If plaintiffs were allowed to collect before determination of the appeal and the appeal reversed the judgment, then there would no longer be a final judgment and the State would have to seek recoupment of the funds. Collection by the State could be problematic depending upon what plaintiffs have done with the money in the interim. Requiring the State to engage in collection efforts would divert attention away from and interfere with the Attorney General's defense of the State's interests and the employee's interests. It would also be contrary to governmental efficiency.

Moreover, a judgment reversed on appeal could be remanded for further proceedings. There could be a new trial, a new judgment, and a new appeal. This

9

could lead to a new round of payment, reversal, and possible recoupment. Such a result would be absurd; consequently, we must reject this interpretation. *Killingsworth*, 168 S.W.3d at 623.

Requiring the State to pay a judgment from the Fund while the judgment is still subject to being vacated, reversed, or modified on appeal is not efficient and does not protect State business. The only interpretation of the term "final judgment" that is consistent with the purposes and policies of the act that created the Fund is one of the options discussed in *Berbiglia*: a judgment that is conclusive on the parties because the losing party has failed to appeal within the time allowed or has appealed and the appeal has been determined. *See Berbiglia*, 423 S.W.2d at 768. This interpretation ensures that payment from the Fund will be made only once in the case and that the State will not have to expend time and resources for recoupment. Hence, we find that the legislature intended that the term "final judgment," as used in Section 105.711.2, refers to a conclusive determination of the liability of the State employee, with no further appeals or review possible.[4]

In this case, Pryor's petition alleged only that the clerk of the court entered judgment on the jury's verdict and that, later, the court entered a judgment apportioning the verdict between the minor children and their counsel. She did not allege any facts showing that the judgment was a "final judgment" within the

---

[4] This interpretation is consistent with *State ex rel. Cravens v. Nixon*, 234 S.W.3d 442 (Mo. App. 2007), another case involving a mandamus action to collect a federal court judgment from the Fund. Although the existence of a "final judgment" for purposes of Fund liability was not at issue, this court specifically noted that the underlying federal court judgment against the State employee had not been appealed. *Id*. at 445.

10

meaning of Section 105.711.2, that is, a conclusive determination of Julian's liability with no further appeals or review possible.  Therefore, Pryor failed to allege facts demonstrating a clear, unequivocal, specific, and presently existing right to payment from the Fund.  The circuit court properly dismissed her petition for writ of mandamus.

## CONCLUSION

The judgment is affirmed.

_____
LISA WHITE HARDWICK, JUDGE

ALL CONCUR.

11