**Deborah McINTIRE, Appellant,**

v.

**GLAD HEART PROPERTIES, et al., Respondents.**

**No. WD 75674.**

Missouri Court of Appeals, Western District.

May 28, 2013.

Stephen J. Moore and Elizabeth A. Moran, Kansas City, MO, for Appellant.

Michael L. Hughes, Overland Park, KS, for Respondent Glad Heart Properties, Inc.

Matthew F. Mulhern and David A. Gellis, Kansas City, MO, for Respondent Argie.

Before Division Two: ALOK AHUJA, Presiding Judge, and KAREN KING MITCHELL and ANTHONY REX GABBERT, Judges.

KAREN KING MITCHELL, Judge.

Deborah McIntire appeals the circuit court's entry of summary judgment in favor of Stephanie Argie and Glad Heart Properties on McIntire's claims for negligent misrepresentation, unfair and deceptive practices under the Missouri Merchandising Practices Act, breach of contract, rescission of contract, and breach of fiduciary duty, all arising out of the sale of real property. The circuit court found that, when settling with a third party (the home inspector), McIntire executed a general release that barred her later claims against both Argie and Glad Heart. Because the settlement agreement was ambiguous as to the parties' intent regarding the scope of the release provision, summary judgment was inappropriate. We reverse and remand.

## Factual Background [1]

Beginning in late August 2008, McIntire (who was then living out of state) and Argie (the homeowner) began negotiating the sale and purchase of Argie's real property located in Jackson County. Argie employed Diane Bickle, the founder of Glad Heart, as her selling agent. McIntire employed Patti Culton, a real estate agent for Glad Heart, as her buyer's agent. During negotiations for the real estate, Argie represented to McIntire, both on her own and through the Glad Heart agents,

---

1. When reviewing the grant of summary judgment, we view all evidence and reasonable inferences derived therefrom in the light most favorable to the non-moving party. *Ressler v. Clay Cnty.*, 375 S.W.3d 132, 140 (Mo.App. W.D.2012).

that certain water drainage and leaking problems previously existing on the property had been remedied. Argie and McIntire eventually reached an agreement whereby McIntire purchased the property from Argie for $160,000—$4,900 less than the asking price. According to McIntire's pleadings, the purchase price resulted from Culton's (McIntire's agent) refusal to communicate an offer that was $25,000 below the asking price, coupled with Culton's refusal to find sales prices for comparable properties; Culton's refusals formed the basis, in part, for McIntire's breach of fiduciary duty claim against Glad Heart.

McIntire hired Faulconer Inspection to inspect the property. Following the inspection, Faulconer advised McIntire that there were very minimal issues or defects in the property and recommended that McIntire purchase it.

On October 1, 2008, McIntire closed on the property, which she intended to use as a rental, but she did not move to the area until November 16, 2008. After taking possession of the property, McIntire discovered that the repairs purportedly made to remedy the water drainage and leaking problems had not resolved them. The property had many problems with water intrusion, leakage, dampness, water damage, mold growth, and foundation deterioration. McIntire was forced to hire and compensate inspectors, engineers, mold remediation specialists, contractors, and others in an effort to remedy the water-related problems. Consequently, McIntire filed suit against Argie and Faulconer for damages in excess of $25,000.

McIntire reached a settlement agreement with Faulconer for $24,000. The agreement, titled "Final Settlement and Mutual Release of All Claims," contained the following "Release" provision:

> The Parties, including his/her/its heirs, successors and assigns, hereby expressly agree that the receipt and sufficiency of Payment is hereby acknowledged, intended to and does hereby release, acquit, and forever discharge each Party hereto as well as his/her/its respective agents, assigns, attorneys, employees, directors, officers, shareholders, parent companies, predecessors, representatives, servants, subsidiaries and successors, *and all other persons, firms and/or entities* from any and all claims, damages, liability or otherwise, arising directly or indirectly from the sale of the Subject Property, inspection of the Subject Property, and from any and all claims related to the said Subject Property sale and inspection that have been brought or could have been brought, of every kind of nature, known or unknown, anticipated or unanticipated, suspected or unsuspected, including any claim for increased damages for changed conditions and consequences in the Case or flowing therefrom.

(Emphasis added.)

McIntire later dismissed, without prejudice, the remaining counts against Argie, and she then refiled suit against Argie, but this time, she added Glad Heart as a defendant. Argie and Glad Heart both moved for summary judgment, arguing that they, as "other persons, firms and/or entities," fell within the scope of the release provision and were, thereby, released from "any and all" liability to McIntire. In her responses, McIntire argued that the settlement agreement, containing the release provision, was ambiguous as to the intended scope of the release. She relied in part on the following provision (the set-off provision):

> The Parties acknowledge and understand that liability is denied by Faulconer Inspections and Mr. Faulconer, who have made no representations, agreements or promises to do or omit to do

any act or thing not herein set forth. *The parties further stipulate and agree that separate Defendant Stephanie D. Argie and Faulconer Inspection, LLC d/b/a The Home Team Inspection Service are not joint tortfeasors or persons liable in tort for the same injury within the meaning of RSMo 537.060, so that separate Defendant Stephanie D. Argie is not entitled to any set-off or credit for any settlement between the parties hereto.*

(Emphasis added.) McIntire then, relying on a variety of parol evidence, argued that the release provision—despite its inclusion of "all other persons" and "any and all claims"—was intended to release only Faulconer. The circuit court granted both motions for summary judgment, without issuing any findings of fact or conclusions of law, and dismissed McIntire's claims with prejudice. McIntire appeals.

### Standard of Review

"Appellate review of the grant of summary judgment is *de novo.*" *City of Lee's Summit v. Mo. Pub. Entity Risk Mgmt.,* 390 S.W.3d 214, 218 (Mo.App. W.D.2012). "Summary judgment will be upheld on appeal if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist." *Id.* "A factual question exists if evidentiary issues are actually contested, are subject to conflicting interpretations, or if reasonable persons might differ as to their significance." *Martin v. City of Washington,* 848 S.W.2d 487, 492 (Mo. banc 1993). "The record is reviewed in the light most favorable to the party against whom judgment was entered, according that party all reasonable inferences that may be drawn from the record." *Mo. Pub. Entity Risk Mgmt.,* 390 S.W.3d at 218.

"A defending party may establish a right to judgment as a matter of law by showing ... [that] there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense." *Id.* at 218–19. "Once the movant has established a right to judgment as a matter of law, the non-movant must demonstrate that one or more of the material facts asserted by the movant as not in dispute is, in fact, genuinely disputed." *Id.* at 219.

### Analysis

McIntire raises three points on appeal. She argues that the circuit court erred in granting summary judgment because: (1) the court examined the release provision in isolation, rather than viewing the contract as a whole, when determining whether there was an ambiguity; (2) the court failed to recognize a genuine issue of material fact regarding the intent of the parties as to the scope of the release; and (3) the court should have allowed McIntire more time to conduct the necessary discovery to refute Argie's and Glad Heart's arguments before granting their motions for summary judgment. We agree with McIntire's first two points on appeal; thus, we need not reach her third point.

**A. The settlement agreement was ambiguous with respect to the contracting parties' intent as to the scope of the release provision.**

▮▮▮▮ "[A] release of one joint tortfeasor does not operate to release other joint tortfeasors unless the terms of the release so provide." *Hawes v. O.K. Vacuum & Janitor Supply Co.,* 762 S.W.2d 865, 867 (Mo.App. E.D.1989) (citing section 537.060).[2] "Determining whether a release

---

**2.** All statutory citations are to RSMo 2000, as updated through Cum.Supp.2012, unless otherwise noted.

Section 537.060 provides, in part:

operates to release claims against a non-settling tortfeasor requires examination of the language of the release." *Lunceford v. Houghtlin*, 170 S.W.3d 453, 460 (Mo.App. W.D.2005).

■ "In construing a release, as with any contract, the intention of the parties governs[,] and any question concerning the scope and extent of the release is to be determined by what may fairly be said to be in the parties' contemplation, which in turn is resolved in the light of all the surrounding facts and circumstances under which the parties acted."[3] *Slankard v. Thomas*, 912 S.W.2d 619, 624 (Mo.App. S.D.1995). "The intent of the parties, however, is governed by the language used in the release." *Id.* "Plain language forecloses speculation about intent of the parties." *Id.*

■ "If a release states that it releases 'all claims' against 'any and all persons,' or similar language, it may operate as a general release, and effectively extinguish claims against all tortfeasors, even those who were not parties to the release."

*Lunceford*, 170 S.W.3d at 460; *see also Ellis v. Reisenbichler*, 712 S.W.2d 468, 469 (Mo.App. E.D.1986) (holding that general release language met section 537.060's requirement that an intent to release non-settling tortfeasors be stated in the release itself).

■ Here, the plain language of the release provision unambiguously releases not only Faulconer but also "all other persons, firms and/or entities from any and all claims" arising out of both the sale and inspection of the property. This language, if read in isolation, would cover both Argie and Glad Heart. Yet, as McIntire points out, "[i]n determining if a contract is ambiguous, we review the terms of a contract as a whole, not in isolation." *City of St. Joseph v. Lake Contrary Sewer Dist.*, 251 S.W.3d 362, 367 (Mo.App. W.D.2008). " 'An ambiguity exists when there is more than one reasonable interpretation which can be gleaned from the contract language.' " *Id.* (quoting *Harris v. Union Elec. Co.*, 622 S.W.2d 239, 247 (Mo.App. E.D.1981)).

When an agreement by release, covenant not to sue or not to enforce a judgment is given in good faith to one of two or more persons liable in tort for the same injury or wrongful death, such agreement shall not discharge any of the other tort-feasors for the damage unless the terms of the agreement so provide; however such agreement shall reduce the claim by the stipulated amount of the agreement, or in the amount of consideration paid, whichever is greater. The agreement shall discharge the tort-feasor to whom it is given from all liability for contribution or noncontractual indemnity to any other tort-feasor.

It has been held that "[t]he clear effect of [section 537.060] is to preclude the unintended release of a non-settling defendant." *Elsie v. Firemaster Apparatus*, 759 S.W.2d 305, 307 (Mo.App. E.D.1988).

3. This language implies that parol evidence could be considered in determining intent, but we believe that puts the cart before the

horse, given that parol evidence is admissible to establish intent *only* if there is an ambiguity regarding intent within the four corners of the document itself. *See City of Harrisonville v. Pub. Water Supply Dist. No. 9*, 49 S.W.3d 225, 231, 235 (Mo.App. W.D.2001). Absent ambiguity within the language of the document, parol evidence is generally inadmissible. *See id.* at 235. There may be some exceptions to this general rule, but none of them apply to this case. *See, e.g., State ex rel. Normandy Orthopedics, Inc. v. Crandall*, 581 S.W.2d 829, 833–34 (Mo. banc 1979) (allowing the admission of parol evidence to rebut a presumption of full satisfaction arising from general release language in a situation involving independent and successive tortfeasors); *Bailey v. Aetna Cas. & Sur. Co.*, 497 S.W.2d 816, 819–20 (Mo.App.1973) (noting that general releases of liability arising under certain facts operate to bar subsequent torts only and not subsequent suits pursuant to contract).

In *Hawes*, the defendants in a tort suit filed motions for summary judgment, asserting the affirmative defense of release based upon a general release previously executed by the plaintiff as part of a settlement agreement with a separate defendant. *Hawes*, 762 S.W.2d at 866–67. The defendants invoking the protection of the general release were not parties to the settlement agreement, but the release itself covered not only the settling defendant but also "any other person, firm or corporation charged or chargeable with responsibility or liability . . . from any and all claims . . . arising from any act or occurrence up to the present time and particularly" related to the accident at issue. *Id.* The court first determined that the release constituted a general release that, by its terms, unambiguously released anyone who could potentially be found liable for the plaintiff's injuries (including the non-settling defendants). *Id.* at 868. The court indicated that, "[i]f this were the only relevant language in the release, then the parties' intentions would be clear, parol evidence would be inadmissible, and the release would extinguish plaintiff's cause of action against defendants."[4] *Id.*

The court noted that "[t]he language in [the release provision] is not, however, the only relevant language." *Id.* The court then identified a separate provision of the settlement agreement whereby the plaintiff agreed to "hold in trust $8,000.00 're-ceived through any settlement with or judgment against any person or organization' arising out of the accident." *Id.* The court determined that, "[a]t most, this language demonstrates an understanding that plaintiff intended to pursue tortfeasors other than [the settling defendant]." *Id.* Relying on the trust provision, the court found that an ambiguity existed within the settlement agreement regarding the settling parties' intentions and that "[p]arol evidence should have been admitted to resolve this ambiguity." *Id.* The court also determined that summary judgment was inappropriate in light of the facts that "resolution of [the] case turn[ed] on the parties' intentions, and parol evidence [was] necessary to elucidate those intentions. . . ." *Id.*

We find *Hawes* instructive in the case at hand. Certainly, as in *Hawes*, the language in McIntire's release provision constitutes a general release, and, if it were the only relevant language in the settlement agreement, it would unambiguously demonstrate an intent to release both Argie and Glad Heart from liability to McIntire. But, as in *Hawes*, the language of the release is not the only relevant language in the settlement agreement; the set-off provision plainly contemplates a future event wherein a judgment against another tortfeasor (specifically Argie) could arise.[5] Thus, it is questionable

---

4. A general release may not, by its terms, be an unambiguous release when the language of the release, though otherwise broad, appears to limit its application to a specific subject or event. *See Grumley v. Webb*, 44 Mo. 444, 447 (Mo.1869) (indicating that general language of the release, though exceedingly broad and comprehensive, did not unambiguously release all claims pending between the parties when the release referenced only one of the pending actions); *Yeager v. St. Joseph Lead Co.*, 223 Mo.App. 245, 12 S.W.2d 520, 523 (1929) ("[L]anguage, however general in its form, when used in connection with a partic-ular subject-matter, will be presumed to be used in subordination to that matter, and will be construed and limited accordingly.").

5. We recognize that *Hawes* relied on section 537.060 and that the set-off provision specifically seeks to remove the case from the coverage of section 537.060. While we question the parties' ability to contract themselves and Argie out of the statute's coverage, the only question we are addressing here is whether the terms of the contract reflect an ambiguity as to intent. We offer no opinion on enforce-

whether the settling parties intended to release anyone other than each other. The fact that the settlement agreement contemplated a scenario wherein McIntire would obtain a judgment against a non-settling tortfeasor (Argie) creates an ambiguity with respect to the scope and extent of the release provision—purporting to release any and all tortfeasors involved in the sale and inspection of the property— for the parties could not simultaneously release all tortfeasors yet expect to later obtain a judgment against one of them. Given the conflicting nature of these provisions, an ambiguity exists within the four corners of the settlement agreement regarding the parties' intent as to the scope and extent of the release provision. Consequently, the circuit court should have considered parol evidence in determining whether summary judgment was appropriate.

Point I is granted.

**B. The parol evidence offered by McIntire created a genuine dispute of material fact as to the contracting parties' intent in the release; thus, summary judgment was inappropriate.**

█ In her second point, McIntire argues that summary judgment was inappropriate in that there was a genuine issue of material fact regarding the settling parties' intent as to scope of the release. We agree.

"For purposes of Rule 74.04, a 'genuine issue' exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts." *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 382 (Mo. banc 1993). "A 'genuine issue' is a dispute that is real, not merely argumentative, imaginary or frivolous." *Id.* To establish a genuine issue of material fact, the non-moving party must provide "specific references to the discovery, exhibits or affidavits that demonstrate specific facts showing that there is a genuine issue for trial." Rule 74.04(c)(2).[6]

In support of her suggestions in opposition to summary judgment, McIntire provided affidavits from herself and her counsel, both indicating that the settling parties never intended their release to affect anyone other than the settling parties. McIntire also provided an email from Faulconer's counsel to McIntire's counsel, asking, "Do you have any suggested language to add to the release in an effort not to release Argie?" This question supports the notion that neither party intended their release to affect those who were not parties to the settlement agreement.[7]

"[W]hen the resolution of a case turns on the parties' intentions, and parol evidence is necessary to elucidate those intentions, summary judgment is inappropriate." *Hawes*, 762 S.W.2d at 868.

Point II is granted. In light of our rulings on McIntire's first two points on appeal, we need not reach her third point.

### Conclusion

· The settlement agreement executed by McIntire and Faulconer was ambiguous as

---

ability of any of the provisions of the settlement agreement.

6. All rule references are to Missouri Supreme Court Rules (2012), unless otherwise noted.

7. We recognize that this question could also demonstrate that the release provision meant exactly what it said, given that there was no language added or removed that would exempt Argie from its coverage. But, when reviewing the grant of summary judgment, we are to consider all facts and inferences in the light most favorable to the non-moving party. *Ressler*, 375 S.W.3d at 140.

to the parties' intent regarding scope of the release provision. Consequently, parol evidence was admissible to address this ambiguity. The evidence McIntire submitted in response to Argie's and Glad Heart's summary judgment motions established a genuine dispute of material fact regarding the settling parties' intent as to the scope of the release provision in the settlement agreement. Thus, summary judgment was inappropriate. We reverse the circuit court's grant of summary judgment and remand the case for further proceedings consistent with this opinion.

ALOK AHUJA, Presiding Judge, and ANTHONY REX GABBERT, Judge, concur.