

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| MARK KERSHAW, et al., | ) |
| | ) |
| Appellants, | ) |
| | )   **WD76864** |
| v. | ) |
| | )   **OPINION FILED:** |
| | )   **May 6, 2014** |
| CITY OF KANSAS CITY, MISSOURI, | ) |
| | ) |
| Respondent. | ) |

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable Edith L. Messina, Judge**

**Before Division One:** Joseph M. Ellis, Presiding Judge, and
Karen King Mitchell and Anthony Rex Gabbert, Judges

Mark Kershaw, an employee of the City of Kansas City, and his wife, Esther Kershaw, brought a declaratory judgment suit against the City of Kansas City, Missouri, to recover money from the City Legal Expense Fund on an underlying negligence judgment against Mark Kershaw's co-employee, Donald Starr. The Kershaws appeal from the trial court's judgment sustaining the City's motion for summary judgment and denying the Kershaws' motion for summary judgment. The Kershaws raise two points on appeal. First, they contend that the City did not have immunity because: (1) City employee Donald Starr did not have immunity as to the Kershaws' original tort claim; and (2) the City's ordinance establishing the City Legal Expense

Fund constitutes an agreement to pay for damages caused by its employees and obviates any immunity for the City. Second, they contend that the City's ordinance covers their claim in that the ordinance compels the City to pay for damages caused to third parties injured by City employees, irrespective of Mark Kershaw's status as a co-employee.

We reverse and remand.

**Factual and Procedural Background**

On January 14, 2007, Mark Kershaw ("Kershaw") was injured in an accident when Donald Starr's vehicle rear-ended Kershaw's vehicle while they were both plowing snow for the City. At the time of the accident, Kershaw and Starr were employees of the City, working in the scope and course of their employment.

On November 8, 2007, Kershaw filed a claim with the State of Missouri Labor and Industrial Relations Commission Division of Workers' Compensation, for his injuries from the January 14, 2007 accident. On November 6, 2009, the City compensated Kershaw for his injuries arising from the accident by way of stipulation for a $129,588.54 settlement, including $64,855.00 for medical expenses, $22,559.94 for temporary disability (lost wages), and a $42,173.60 lump-sum payment for all expenses and injuries.

On August 9, 2010, Mark and Esther Kershaw (collectively "the Kershaws") filed suit in the Circuit Court of Jackson County, Missouri, against Starr for personal injuries related to the accident. In the personal injury case, Starr was represented by the legal department of the City of Kansas City, Missouri. The Kershaws and Starr negotiated an agreement pursuant to section 537.065 RSMo,[1] wherein Starr assigned to the Kershaws any right Starr might have against the City regarding the personal injury suit. Though the City was not a party to this agreement, the

---

[1] All statutory references to RSMo are to the Missouri Revised Statutes 2000, as updated through the 2013 Cumulative Supplement, unless otherwise noted.

2

agreement was negotiated by the City's attorney on Starr's behalf. On November 15, 2011, the court entered judgment against Starr and in favor of the Kershaws in the amount of $275,000.00. The Kershaws requested that the City pay the judgment, and the City refused.

On February 23, 2012, the Kershaws filed a petition for declaratory judgment against the City, contending that the City denied their request to pay the judgment entered against Starr and requesting that the court find that the City must pay the judgment entered against Starr in the civil case pursuant to section 2-1685 of the Code of Ordinances, City of Kansas City, Missouri ("the Code").[2] The City did not raise any immunity defenses in its answer. Both parties filed motions for summary judgment.

On August 23, 2013, the trial court entered judgment denying the Kershaws' motion for summary judgment and granting the City's motion for summary judgment, finding that the City "did not waive immunity under the Workers' Compensation Statute under City Ordinance Sec. 2-1685(d)."

The Kershaws appeal.

## Standard of Review

Because "[t]he propriety of summary judgment is purely an issue of law," we review the grant of summary judgment de novo. *ITT Comm. Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment." *Id.*

---

[2] All references to the City Code are to the Code of Ordinances, City of Kansas City, Missouri (2009), unless otherwise noted.

"When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered." *Id*. "We accord the non-movant the benefit of all reasonable inferences from the record." *Id*.

"'Generally, an order denying a party's motion for summary judgment is not a final judgment and is therefore not subject to appellate review.'" *Sauvain v. Acceptance Indem. Ins. Co.*, 339 S.W.3d 555, 568 (Mo. App. W.D. 2011) (quoting *Schroeder v. Duenke*, 265 S.W.3d 843, 850 (Mo. App. E.D. 2008)). "'However, the denial of a motion for summary judgment may be reviewable when, as in this case, the merits of the motion for summary judgment are intertwined with the propriety of an appealable order granting summary judgment to another party.'" *Id.* (quoting *Schroeder*, 265 S.W.3d at 850).

**Analysis**

**I. The Underlying Negligence Suit Against Co-Employee Starr**

As a preliminary matter, we briefly summarize the recent history of the law regarding negligence actions brought by employees against co-employees for workplace injuries, such as the one brought by the Kershaws in the underlying suit in this case. We set forth this summary only to illustrate the circumstances in which the underlying suit came to pass and to indicate the parameters of our review in this case.

Before 2005, the exclusive-remedy provision of the Workers' Compensation Act (section 287.120) was interpreted to mean that "a co-employee could not be sued [for a workplace accident] unless there was a showing of 'something more' than a breach of the employer's duty to provide a safe workplace." *Robinson v. Hooker*, 323 S.W.3d 418, 423 (Mo. App. W.D. 2010) (quoting *State ex rel. Badami v. Gaertner*, 630 S.W.2d 175, 180 (Mo. App. E.D. 1982)). In 2005, however, section 287.800 of the Workers' Compensation Act was amended to require

4

strict, rather than liberal, construction. *Robinson*, 323 S.W.3d at 423. In *Robinson*, this Court determined that the 2005 amendment meant that co-employees were no longer entitled to invoke employer immunity under section 287.120. *Id.* at 424. As a result, employees retained "a common law right of action against co-employees who d[id] not fall squarely within the definition of 'employer.'" *Id.* at 425.

In *Hansen v. Ritter*, 375 S.W.3d 201, 207 (Mo. App. W.D. 2012), we noted that "[alt]hough *Robinson* abrogated affording immunity under the Act to co-employees alleged to have breached an employer's non-delegable duty, . . . *Robinson* neither created nor defined the rights or remedies of an injured person against co-employees." *Id*. Rather, *Robinson* "merely acknowledged that whatever rights and remedies were available 'at common law or otherwise' were not barred by the exclusivity provision of the Act." *Id*.

In *Hansen*, however, this Court was required "to explore the rights and remedies of an injured person against co-employees 'available at common law.'" *Id*. at 208. While recognizing that *Robinson* abrogated the prior construction of the exclusive-remedy provision of the Act, we nevertheless acknowledged that "the underlying (and long[-]standing) common law principle that a co-employee owes no duty to fellow employees to perform an employer's non-delegable duties remain[ed] good law." *Id.* at 216. In affirming the trial court's judgment, this Court held that "[u]nless a petition asserts a personal duty owed by a co-employee that exists independent of the employer's non-delegable duties, and thus a duty that would exist independent of the master-servant relationship, the petition will not survive a motion to dismiss for failure to state a cause of action for negligence." *Id.* at 217. We further noted that "the parameters of a co-employee's common law duties to fellow employees for workplace injuries may be influenced by a 2012 amendment to section 287.120.1 of the Act." *Id*. at 217 n.17. That amendment, which was

enacted in response to *Robinson,* "legislatively afford[ed] immunity to co-employees unless a fellow employee is injured as a result of the co-employee's 'affirmative negligent act that purposefully and dangerously caused or increased the risk of injury.'" *Id.* (quoting § 287.120.1); *see also Shaw v. Mega Indus. Corp.*, 406 S.W.3d 466, 474 n.5 (Mo. App. W.D. 2013) (recognizing that "[t]he legislature responded to the *Robinson* decision by enacting amendments to § 287.120.1 in 2012").[3]

The accident that gave rise to the Kershaws' claims against Starr occurred after the 2005 amendment to the Workers' Compensation Act, addressed in *Robinson*, but before the 2012 amendment to section 287.120, enacted in response to *Robinson*. On appeal, in their first point relied on, the Kershaws contend that "Starr did not have immunity to [their] original claim" because "[f]or a brief period of history, between *Robinson v. Hooker* and *Hansen v. Ritter*, co-employees had no immunity from suit." In light of our discussion, *supra*, we do not believe this to be an accurate statement of the law following *Robinson*.

Our disagreement with the Kershaws' statement, however, is immaterial to the issue before us because the City never claimed in the underlying declaratory judgment action that Starr had any type of immunity from the Kershaws' negligence suit, that Starr was not liable to the Kershaws for negligence under the common law, or that the City was not bound by the trial court's judgment in the underlying negligence suit. "This court's review of the grant of

---

[3] Section 287.120.1, as amended in 2012 and 2013, provides, in relevant part:

Every employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident or occupational disease arising out of and in the course of the employee's employment. Any employee of such employer shall not be liable for any injury or death for which compensation is recoverable under this chapter and every employer and employees of such employer shall be released from all other liability whatsoever, whether to the employee or any other person, except that an employee shall not be released from liability for injury or death if the employee engaged in an affirmative negligent act that purposefully and dangerously caused or increased the risk of injury.

6

summary judgment is limited to those issues raised in the trial court, and this court 'will not review or convict a trial court of error on an issue that was not put before the trial court to decide.'" *United Mo. Bank, N.A. v. City of Grandview*, 105 S.W.3d 890, 895 (Mo. App. W.D. 2003) (quoting *Barner v. The Mo. Gaming Co.*, 48 S.W.3d 46, 50 (Mo. App. W.D. 2001)). Furthermore, "[i]t is not within the appellate court's province to speculate about and then decide arguments that are not asserted or that are merely asserted, but not developed." *Firestone v. VanHolt*, 186 S.W.3d 319, 324 (Mo. App. W.D. 2005).

## II. The City Legal Expense Fund ordinance clearly and unequivocally establishes a duty on the City's part to pay Starr on the Kershaws' negligence judgment.

We now turn to the main issue presented in this case, which is whether the Kershaws may recover from the City Legal Expense Fund the amount awarded them in their negligence judgment against Starr once Starr assigned his right to recover from the fund to the Kershaws.[4]

"To prevail on a motion for summary judgment, the movant must show that there is no dispute of material fact and that []he is entitled to judgment as a matter of law." *Betts-Lucas v. Hartmann*, 87 S.W.3d 310, 315 (Mo. App. W.D. 2002).

The trial court determined that the City "did not waive immunity[5] under the Workers' Compensation Statute under City Ordinance Sec. 2-1685(d)." The Kershaws contend that immunity under the Workers' Compensation Act does not apply in this case because: (1) Starr

---

[4] The agreement the parties entered into pursuant to section 537.065 RSMo prevents the Kershaws from executing on any of Starr's assets and assigns the Kershaws the right to pursue enforcement of the judgment against the City. "'The general rule is that an absolute assignment of an entire right or interest works as a divestiture of all right or interest of the assignor; and, for the purpose of maintaining a civil action, the assignee becomes the real party in interest.'" *Daniele v. Mo. Dep't of Conservation*, 282 S.W.3d 876, 880 (Mo. App. E.D. 2009) (quoting *McMullin v. Borgers*, 806 S.W.2d 724, 731 (Mo. App. E.D. 1991)). "Because an assignee merely steps into the shoes of the assignor, an *assignee* must allege facts showing that the *assignor* would be entitled to relief." *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 128 (Mo. banc 2010). Therefore, our analysis focuses on Starr's right to enforce the judgment.

[5] The trial court in this case and other courts addressing issues concerning section 287.120 RSMo have used the word "immunity" to refer to the exclusive-remedy provision of the Workers' Compensation Act. For consistency and in order to avoid confusion, we also use the word "immunity" in this opinion to refer to the exclusive-remedy provision of the Workers' Compensation Act. Where we refer to other types of immunity, we will note the type of immunity to which we are referring.

7

did not have immunity[6] to their underlying negligence claim; and (2) the City does not have immunity under the Workers' Compensation Act from Starr's claim, as the City expressly adopted section 2-1685, agreeing to pay for damages caused by its employees and obviating any immunity under the Workers' Compensation Act.

As previously discussed, the City does not contend that *Starr* was immune from suit in the underlying negligence action based upon either workers' compensation exclusivity, official immunity, or the public duty doctrine. Rather, the City argues that *it* is immune from suit in the present action. Specifically, the City contends that the Kershaws' claim for damages is barred by the exclusivity provision of section 287.120, because the City did not assume responsibility for damages in this case either contractually or through its ordinances.[7] We limit our analysis to these contentions.

Before the 2012 and 2013 amendments, section 287.120 of the Workers' Compensation Act provided, in relevant part:

> Every employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of the employee's employment, and shall be released from all other liability therefor whatsoever, whether to the employee or any other person.

§ 287.120.1 (2000). Liability under the Workers' Compensation Act "releases the employer from all other liability in its role as employer." *Heavens v. Laclede Gas Co.*, 755 S.W.2d 331, 332 (Mo. App. E.D. 1988).[8]

---

[6] The Kershaws do not specify the type of immunity to which they are referring.

[7] The City does not allege that it is immune from the Kershaws' claims under either sovereign or governmental immunity.

[8] We note that loss of consortium claims are also subject to the exclusive remedy provisions of the Workers' Compensation Act. *Quinn v. Clayton Const. Co., Inc.*, 111 S.W.3d 428, 434 n.4 (Mo. App. E.D. 2003); *Felts v. Ford Motor Co.*, 916 S.W.2d 798, 803 (Mo. App. W.D. 1995).

8

Nevertheless, the Kershaws suggest, citing *McDonnell Aircraft Corp. v. Hartman-Hanks-Walsh Painting Co.*, 323 S.W.2d 788 (Mo. 1959), that an employer may voluntarily assume liability for an employee's injuries beyond the liability it incurs under the Workers' Compensation Act by agreeing to "indemnify" a third party from claims for the employee's injuries. The Kershaws contend that the City's ordinances concerning the City Legal Expense Fund constitute an agreement to afford protection to its employees for damages those employees cause to third persons. The Kershaws argue that the ordinances speak in mandatory terms and are thus enforceable. As such, they claim, the ordinance represents a separate duty assumed by the City wholly independent of the Workers' Compensation Act. Hence, they allege that, while section 287.120 may generally protect the City from a direct claim by the Kershaws, it does not protect the City from a breach of an independent duty to Starr, such as that assumed by the City here.

In *McDonnell*, an employee was injured while painting third-party plaintiff McDonnell's plant under a contract between McDonnell and the employer. 323 S.W.2d at 790. The employee received workers' compensation from his employer. *Id.* The employee then recovered judgment against McDonnell, following a settlement. *Id*. at 791. McDonnell then sought to recover the amount of the settlement from the employer on a third-party petition claiming that the employer had, by agreement, assumed the duty to warn its employees of dangerous conditions at McDonnell's plant. *Id.* The trial court dismissed McDonnell's petition based on immunity under the Workers' Compensation Act. *Id.* at 790-91.

On appeal, the Missouri Supreme Court held that the Workers' Compensation Act did not prevent holding the employer liable to indemnify McDonnell for the loss caused to McDonnell by breach of its duty to McDonnell (to warn and protect its employees) which arose by reason of

9

the employer's express verbal agreement to assume and perform that duty. *Id.* at 796. The Court reasoned:

> [T]he language of section 287.120(1), [that the employer] 'shall be released from all other liability *therefor* whatsoever,' means all other liability 'for personal injury or death of the employee'; and does not mean liability for breach of an independent duty or obligation owed to a third party by an employer whose liability for injury to his employee is under the compensation act.

*Id.* The Court stated that "[s]uch a ruling does not hold the employer liable for the personal injury or death of his employee but instead holds him liable for the breach of an independent duty to a third party which he expressly agreed to perform." *Id.*

In *Martin v. Fulton Iron Works Co.*, 640 S.W.2d 491, 493 (Mo. App. E.D. 1982), the plaintiff successfully sued a building owner for the wrongful death of her husband, who was electrocuted while painting the building. The building owner brought a third-party indemnity action against her husband's employer. *Id.* The trial court entered an indemnification judgment against the employer, and the employer appealed. *Id.* at 493-94. On appeal, the court determined that, without an express indemnification contract between the building owner and the employer, the building owner's indemnity action failed and section 287.120.1 of the Workers' Compensation Act cloaked the employer from recovery. *Id.* at 496. The court noted that *Parks v. Union Carbide Corp.*, 602 S.W.2d 188 (Mo. banc 1980), narrowed *McDonnell* "by requiring an express promise to indemnify" to prevent such an action from being barred by section 287.120.1. *Id.* at 496. The court explained that

> [t]he agreement must contain in "clear and unequivocal terms" an intention to indemnify liabilities due to the indemnitee's own negligence. Aside from such an express agreement, an employer is not liable to the non-employer defendant for any sums that the latter might be responsible for in tort to the injured plaintiff-employee.

10

*Id.* (quoting *Parks*, 602 S.W.2d at 189); *see also Nusbaum v. City of Kansas City*, 100 S.W.3d 101, 105 (Mo. banc 2003) (citing *Parks*, 602 S.W.2d at 190, for the proposition that "[a] contract of indemnity will not be construed so as to indemnify one against loss or damage resulting from [one's] own negligent acts unless such intention is expressed in clear and unequivocal terms").

Under *McDonnell* and *Martin*, an employer may voluntarily assume liability for an employee's injuries beyond that which it incurs under the Workers' Compensation Act by expressly agreeing to "indemnify" a third party from claims for the employee's injuries. Such an agreement confers a duty or obligation owed to a third party independent of the employers' liability to the employee under the Workers' Compensation Act. The question before us is whether the City's ordinance constitutes a clear and unequivocal agreement to allow recovery from the City Legal Expense Fund by Starr in this case.

The City argues that under *McDonnell* and *Martin*, only an express agreement (i.e., a contract) to indemnify between it and Starr can override its immunity under the Workers' Compensation Act. We disagree. While the cases discussed, *supra*, concerning the duty to indemnify, required an express promise to indemnify, they arose in the context of a claim that the duty to indemnify arose solely from the nature of the relationship between the parties. The courts held that an express agreement to indemnify must exist in order for such a duty to be imposed. But this does not mean that the agreement must always be in the form of a contract between the employer and the party alleged to be indemnified. This court has recognized that the right to indemnification may arise from a statute, *Am. Nat'l Prop. & Cas. Co. v. Ensz & Jester, P.C.*, 358 S.W.3d 75, 84 n.11 (Mo. App. W.D. 2011), and the issue in the present case is whether the City's ordinance grants such a right to Starr.

11

Prior to being amended in 2012,[9] section 2-1685 of the Code of Ordinances of the City of Kansas City, Missouri provided, in relevant part, as follows:

Section 2-1685 – City legal expense fund.

(b)    There is hereby established a fund to be known as the city legal expense fund, the purpose of which is to enable the city to pay, in whole or in part, claims for various losses and liabilities incurred by the city, except that no payments from the fund are to be made for claims or lawsuits in which the city has immunity under section 537.600 RSMO, or other applicable law, either statutory or case law.   Such immunities include, but are not limited to sovereign, governmental, official immunity and the public duty doctrine.  However, claims and lawsuits against the city may be paid from the fund to the extent that a court of competent jurisdiction, in a final judgment, finds that no immunity is applicable, or that the public duty doctrine affords no defense.

. . .

(d)    Nothing in sections 2-1685 through 2-1688 shall be construed to broaden the liability of the city beyond the provisions of sections 537.600 to 537.610 RSMO, or other applicable law, either statutory or case law, nor to abolish or waive any defense at all which might otherwise be available to the city, its agents, representatives, officials, officers or employees.

. . .

(g)    Use of the city legal expense fund.  Losses payable from the city legal expense fund shall be as follows: . . .

    (2)  Claims made by third parties based on liability of the city, its agents, representatives, officials, officers, or employees, if such claims are not barred by sovereign, governmental, official immunity, and the public duty doctrine, in accordance with Section 537.600 RSMO, or other applicable law, either statutory or case law based on a final judgment of a court of competent jurisdiction.

CODE OF ORDINANCES OF THE CITY OF KANSAS CITY, MISSOURI (2009).  The City contends that it did not assume responsibility for damages such as those in the present case through the language of its ordinances because:  (1) section 2-1685(d) indicates that nothing in sections 2-1685

---

[9] The ordinance was amended on July 26, 2012, and the amended ordinance was codified in the Code of Ordinances of the City of Kansas City, Missouri Supplement 90 (November 20, 2012).  The trial court's decision in this declaratory judgment action was entered on August 23, 2013.  The only change relevant to our analysis is that sections 2-1685(g)(1), (2), and (3) are now codified at section 2-1685(h)(1), (2), and (4), respectively.

12

through 2-1688 should be construed to broaden the liability of the City beyond the liability of sections 537.600 to 537.610, or waive any legal defense available to the city or its employees; (2) the term "third parties" in section 2-1685(g) should not include employees injured while working for the City; and (3) section 2-302 makes the payment of claims discretionary.

"'When construing a city ordinance, the general rules of statutory construction apply.'" *State ex rel. Outcom, Inc. v. City of Peculiar*, 350 S.W.3d 57, 63 (Mo. App. W.D. 2011) (quoting *Moynihan v. Gunn*, 204 S.W.3d 230, 234 (Mo. App. E.D. 2006)). "Where the language of the ordinance is clear and unambiguous, . . . a court should merely give effect to the ordinance as it is written"; no statutory construction is needed. *Id.* The court "may not create an ambiguity where the words of the ordinance are plain." *Id.* "In determining the intent and meaning of statutory language, 'the words must be considered in context and sections of the statutes in pari materia, as well as cognate sections, must be considered in order to arrive at the true meaning and scope of the words.'" *State ex rel. Evans v. Brown Builders Elec. Co., Inc.*, 254 S.W.3d 31, 35 (Mo. banc 2008) (quoting *State ex rel. Wright v. Carter*, 319 S.W.2d 596, 600 (Mo. banc 1959)). "In determining legislative intent, no portion of a statute is read in isolation, but rather is read in context to the entire statute, harmonizing all provisions." *Aquila Foreign Qualifications Corp. v. Dir. of Revenue*, 362 S.W.3d 1, 4 (Mo. banc 2012). "'Statutes should be construed in such a way as to avoid unreasonable or absurd results.'" *Nance v. Maxon Elec., Inc.*, 395 S.W.3d 527, 537 (Mo. App. W.D. 2012) (quoting *Great Rivers Habitat Alliance v. City of St. Peters*, 384 S.W.3d 279, 288 n.7 (Mo. App. W.D. 2012)). "'An entire clause of the statute should not be relegated to the status of excess verbiage.'" *Id.* (quoting *Schoemehl v. Treasurer of State*, 217 S.W.3d 900, 902 (Mo. banc 2007)). In addition to the general rules of statutory construction, we are mindful of section 1-10(b) of the City Code, which provides that "[a]ll

13

general provisions, terms, phrases and expressions contained in this Code shall be liberally construed in order that the true intent and meaning of the council may be fully carried out."

In the absence of case law addressing the purpose and application of the city ordinance at issue, we find cases concerning the substantially similar Missouri State Legal Expense Fund instructive.

Section 2-1685(b) of the City Code states that the purpose of the City Legal Expense Fund is "to enable the city to pay, in whole or in part, claims for various losses and liabilities incurred by the city." As the plain language of that provision does not clearly indicate the purpose of section 2-1685(g) as it concerns the payment of third party claims against employees, we look to Judge Blackmar's concurring/dissenting opinion in *Cates v. Webster*, 727 S.W.2d 901, 907 (Mo. banc 1987) (Blackmar, J., concurring in part and dissenting in part), in which he explained the purpose of the similar State Legal Expense Fund as follows:

> The State Legal Expense Fund exists to protect the covered employees from the burden and expense of civil litigation relating to the performance of their duties. The purposes are apparent. A competent employee, who is in demand elsewhere, may be unwilling to work for the state without protection. Those who do serve may be unwilling to take necessary risks for fear of litigation.

We find it logical that this would be the purpose of section 2-1685(g) as well, as the language of the State Legal Expense Fund statute and City Legal Expense Fund ordinance is similar,[10] and the same considerations prompting protection of state employees also apply to city employees. We construe the applicable provisions of the City Legal Expense Fund statute in light of this purpose.

---

[10] The language of section 105.726.1 of the State Legal Expense Fund is virtually identical to that of the City's ordinance section 2-1685. Section 2-1685(d) provides: "Nothing in sections 2-1685 through 2-1688 shall be construed to broaden the liability of the city beyond the provisions of RSMo §§ 537.600 to 537.610, or other applicable law, either statutory or case law, nor to abolish or waive any defense at law which might otherwise be available to the city, its agents, representatives, officials, officers or employees." Section 105.726.1 states in pertinent part: "Nothing in sections 105.711 to 105.726 shall be construed to broaden the liability of the State of Missouri beyond the provisions of sections 537.600 to 537.610 RSMo, nor to abolish or waive any defense at law which might otherwise be available to any agency, officer, or employee of the State of Missouri."

We first address the City's claim that it did not assume responsibility for damages through the language of its ordinances because section 2-1685(d) indicates that nothing in sections 2-1685 through 2-1688 should be construed to broaden the liability of the City beyond the liability of sections 537.600 to 537.610,[11] or waive any legal defense available to the city or its employees.

The central case interpreting the State Legal Expense Fund statutes is *Dixon v. Holden*, 923 S.W.2d 370 (Mo. App. W.D. 1996). In *Dixon*, a former highway patrol officer, Oliver Dixon, brought a declaratory judgment suit against the state treasurer and commissioner of administration to recover money from the State Legal Expense Fund on an underlying section 1983 federal judgment against two other highway patrol officers. 923 S.W.2d at 373. The trial

---

[11] Section 537.600 provides, in relevant part:

1. Such sovereign or governmental tort immunity as existed at common law in this state prior to September 12, 1977, except to the extent waived, abrogated or modified by statutes in effect prior to that date, shall remain in full force and effect; except that, the immunity of the public entity from liability and suit for compensatory damages for negligent acts or omissions is hereby expressly waived in the following instances:

(1) Injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles or motorized vehicles within the course of their employment;

(2) Injuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury directly resulted from the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition. In any action under this subdivision wherein a plaintiff alleges that he was damaged by the negligent, defective or dangerous design of a highway or road, which was designed and constructed prior to September 12, 1977, the public entity shall be entitled to a defense which shall be a complete bar to recovery whenever the public entity can prove by a preponderance of the evidence that the alleged negligent, defective, or dangerous design reasonably complied with highway and road design standards generally accepted at the time the road or highway was designed and constructed.

2. The express waiver of sovereign immunity in the instances specified in subdivisions (1) and (2) of subsection 1 of this section are absolute waivers of sovereign immunity in all cases within such situations whether or not the public entity was functioning in a governmental or proprietary capacity and whether or not the public entity is covered by a liability insurance for tort.

15

court granted Dixon's motion for summary judgment and ordered the commissioner of administration to pay a sum from the State Legal Expense Fund to satisfy the federal judgment. *Id.* The State argued on appeal that the declaratory judgment suit violated sovereign immunity because a statute mandated that the State Legal Expense Fund law could not be construed to broaden the provisions of sections 537.600 and .610. *Id.* at 378-79. While the court agreed that "the Legal Expense Fund should not broaden the state's liability for tort," it found that the Fund law did not do so. *Id.* at 379. Rather, "[t]he Fund is merely a voluntary assumption of defense and payment of judgments or claims against state employee[s] sued for their conduct arising out of and performed in connection with official duties on behalf of the state. The doctrine of sovereign immunity is not an issue in this case." *Id.*[12] The court noted that the underlying suit was not against the state, but two of its employees, and concluded that "Missouri, like many other states, has chosen by statute to defend and pay judgments. The doctrine of sovereign immunity is not altered nor implicated by this case or this opinion." *Id.*[13]

We find that this court's analysis of the operation and effect of the State Legal Expense Fund in *Dixon* is equally applicable to the City Legal Expense Fund. Accordingly, we conclude that section 2-1685(g)(2) of the City Code does not broaden the City's liability in violation of section 2-1685(d) of the Code. Rather, like the State Legal Expense Fund, the City Fund "is merely a voluntary assumption" of payment of judgments or claims against City employees sued

---

[12] *See also State ex rel. Cravens v. Nixon*, 234 S.W.3d 442, 447, 449 (Mo. App. W.D. 2007) (finding that sovereign immunity was "simply not applicable" and therefore did not bar an inmate's petition for writ of mandamus to compel payment of judgment under the State Legal Expense Fund for a state employee's sexual assault of the inmate); *Betts-Lucas*, 87 S.W.3d at 327-28 (reiterating the findings in *Dixon* that the Fund constitutes a voluntary assumption of defense and payment of judgment or claims against state employees, and as such, sovereign immunity is not an issue in a claim by a plaintiff seeking recovery from the State Legal Expense Fund); *Cottey v. Schmitter*, 24 S.W.3d 126, 129 (Mo. App. W.D. 2000) (citing *Dixon* for its determination that "[t]he existence of the State Legal Expense Fund does not expand the state's liability beyond the sovereign immunity provisions and does not contradict the policy of limited sovereign immunity," and that "[t]he State Legal Expense Fund is merely a voluntary assumption by the state of defense and payment of claims against state employees sued for their conduct arising out of and performed in connection with official duties on behalf of the state").

[13] *See also Cravens*, 234 S.W.3d at 449 n.5; *Cottey*, 24 S.W.3d at 129-30.

16

for their conduct arising out of, and performed in connection with, their official duties on behalf of the City. *See Dixon*, 923 S.W.3d at 379. Just as the doctrine of sovereign immunity was not an issue in *Dixon* and it progeny, immunity under the exclusivity provision of the Workers' Compensation Act is not at issue in this case.

Next, the City contends that the term "third parties" in section 2-1685(g) should not include employees injured while working for the City, as including employees would oppose the principle and meaning of the Workers' Compensation Act, which is the exclusive remedy for employees against the City when they are injured on the job. "[T]he cardinal rule for construing an ordinance is to ascertain and, if possible, give effect to the intent of the enacting legislative body." *BBCB, LLC v. City of Independence*, 201 S.W.3d 520, 527 (Mo. App. W.D. 2006). As noted *supra*, "[w]hen construing a city ordinance, the general rules of statutory construction apply." *State ex rel. Outcom, Inc.*, 350 S.W.3d at 63 (quoting *Moynihan*, 204 S.W.3d at 234). "If statutory language is not defined expressly, it is given its plain and ordinary meaning, as typically found in the dictionary." *Morse v. Dir. of Revenue*, 353 S.W.3d 643, 645 (Mo. banc 2011). In addition, as noted *supra*, we give terms in the city ordinances liberal construction, as mandated by section 1-10(b) of the City Code.

"Third party" is not defined by the city council. Thus, we turn to the dictionary for the plain and ordinary meaning. "Third party" is defined as "a person who is not a party to a lawsuit, agreement, or other transaction but who is usu[ally] somehow implicated in it; someone other than the principal parties." BLACK'S LAW DICTIONARY 1617 (9th ed. 2009). Here, the principal parties are the City and the city employee subject to liability for actions taken in the course and scope of his employment (Starr). Therefore, according to the plain and ordinary meaning of the term, the Kershaws are third parties. The fact that the city council chose not to

17

explicitly exclude employees from the definition of third parties, coupled with the ordinance's purpose to protect city employees from the costs of litigation resulting from the performance of their duties for the city, lead us to conclude that employees are included within the meaning of "third parties" in section 2-1685(g)(2).

Finally, we address the City's argument that its ordinances clearly indicate that it has the discretion to pay settlements or judgments entered against City employees, and therefore, it cannot be considered to have assumed responsibility for damages in cases such as the one at bar. In support of its argument, the City cites Section 2-302, which provides, in relevant part, that "[t]he city counselor may adjust, settle, compromise or submit to arbitration any action, causes of action, accounts, debts, claims, demands, disputes and matters in favor of or against the city or in which the city is concerned as debtor or creditor." However, Section 2-1685(g) provides that "[l]osses payable from the city legal expense fund *shall* be as follows: . . . (2) Claims made by third parties based on liability of the city, [or] its . . . employees." (Emphasis added.)

"Generally the use of the word 'shall' connotes a mandatory duty." *Neske v. City of St. Louis*, 218 S.W.3d 417, 425 (Mo. banc 2007), *overruled on other grounds by King-Willmann v. Webster Groves Sch. Dist.*, 361 S.W.3d 414, 417 n.4 (Mo. banc 2012). "Whether the use of the word 'shall' in a statute is mandatory or directory is primarily a function of context and legislative intent." *Id.* The State Legal Expense Fund statute, which contains similar language,[14] has been interpreted as imposing "a mandatory duty to pay judgments against employees arising out of [or] connected to their official duties." *Betts-Lucas*, 87 S.W.3d at 327. Similarly, we

---

[14] Section 105.711.2(2) provides, in relevant part:

Moneys in the state legal expense fund shall be available for the payment of any claim or any amount required by any final judgment rendered by a court of competent jurisdiction against: . . . Any officer or employee of the State of Missouri . . . upon conduct of such officer or employee arising out of and performed in connection with his or her official duties on behalf of the state.

18

interpret section 2-1685(g) as imposing a mandatory duty on the City to pay judgments such as the one against Starr in this case. Section 2-302 simply gives the City the authority to settle claims; it does not give the City discretion to refuse to pay judgments entered against employees under section 2-1685(g).

We hold that the City Legal Expense Fund ordinance, specifically section 2-1685(g), clearly and unequivocally establishes a duty on the City's part, wholly independent of its duty to Kershaw under the Workers' Compensation Act, to pay Starr on the Kershaws' negligence judgment,[15] and that section 2-1685(g) does not broaden the City's liability under sections 537.600 to 537.610 in violation of section 2-1685(d). Therefore, the trial court erred in granting the City's motion for summary judgment.

---

[15] We note that whether the State Legal Expense Fund and payments therefrom should be characterized as insurance or indemnity has been the subject of debate in the courts. *See Kesterson v. Wallut*, 157 S.W.3d 675, 682-84 (Mo. App. W.D. 2004) (finding that state legal expense fund was not "insurance" for purpose of determining whether state employee was uninsured motorist, and noting that "[t]here are very good policy reasons for treating the Fund more like an insurance policy than an indemnity statute with respect to how payments from the Fund should be made"); *Cottey*, 24 S.W.3d at 129 n.3 (citing *Dixon*, 923 S.W.2d at 377-78, for its finding that "the statutory scheme governing the State Legal Expense Fund is one of insurance for state employees rather than one of indemnity"); *Dixon*, 923 S.W.2d at 377 (finding that the state legal defense fund "is insurance, or not strictly indemnity"). We have found no case law interpreting whether the City Fund should be characterized as insurance or indemnity, and the language of the ordinance does not indicate whether the Fund is insurance or indemnity. In the case at bar, the Kershaws, through assignment, are enforcing Starr's right to collect from the Fund. Section 2-1685(g) states that "[l]osses payable from the city legal expense fund shall be as follows: . . . (2) Claims made by third parties based on liability of the [City's] employees." Starr would clearly be able to collect from the City directly, and as the Kershaws are enforcing Starr's right, they are able to as well. Whether the City Fund is "insurance" or "indemnity" is not relevant in this case.

In addition, the fact that Starr did not pay the Kershaws on the judgment, but instead assigned his right to collect on the judgment to the Kershaws, is of no import. In *Dixon*, 923 S.W.2d at 378, we found that the fact that there was no stipulation in the State Legal Expense Fund law that a state employee has to first pay a judgment to establish the state's liability, coupled with "[p]ublic policy and sensitivity toward state employees," prevented requiring a state employee to first pay a judgment in order to recover from the State Legal Expense Fund. Similarly, there is no provision in the City Legal Expense Fund ordinance requiring an employee to first pay a judgment and then seek reimbursement from the Fund, and the same public policy considerations that allow recovery from the State Legal Expense Fund without the employee first paying the judgment also apply to the City Legal Expense Fund.

**III. The release in the workers' compensation case has no effect on the Kershaws' right to recover.**

The City contends the Kershaws' claim is barred by the doctrine of accord and satisfaction because of the release Kershaw signed in the workers' compensation case. We note that even though the City alleges that the doctrine of accord and satisfaction bars the Kershaws' claim, the substance of its argument is really that the affirmative defense of release bars the claim. We address the City's argument accordingly.

The Stipulation for Compromise Settlement in the workers' compensation case, signed by Kershaw, provides:

> THE EMPLOYEE UNDERSTANDS: by entering into this settlement, except as provided by Section 287.140.8 RSMo., the EMPLOYEE is forever closing out this claim under the Missouri Workers' Compensation Law; that EMPLOYEE will receive no further compensation or medical aid by reason of this accident/disease; that EMPLOYEE has the right to a hearing of the EMPLOYEE'S claim, which may result in EMPLOYEE receiving more money or less money than is provided by this settlement; that EMPLOYER/INSURER and/or SECOND INJURY FUND is/are released from all liability for this accident/disease upon approval by the Administrative Law Judge.

The City does not suggest that there is anything in the stipulation for compromise settlement that could release Starr's right to collect from the City on the judgment against him. Nor is there any language in the release that suggests Kershaw was releasing any claim he might have against a third party, such as Starr.[16] Therefore, the issue before us is whether the language of the release is broad enough to constitute a release of claims between the principals to the stipulation for compromise settlement (Kershaw and the City) other than those under the Workers' Compensation Act. In other words, does the language of the release bar Kershaw from enforcing Starr's right to indemnity?

---

[16] See the discussion of general releases of third parties, *infra.*

"'In construing a release, as with any contract, the intention of the parties governs[,] and any question concerning the scope and extent of the release is to be determined by what may fairly be said to be in the parties' contemplation, which in turn is resolved in the light of all the surrounding facts and circumstances under which the parties acted.'" *McIntire v. Glad Heart Prop.*, 399 S.W.3d 505, 509 (Mo. App. W.D. 2013) (quoting *Slankard v. Thomas*, 912 S.W.2d 619, 624 (Mo. App. S.D. 1995)). "'The intent of the parties, however, is governed by the language used in the release.'" *Id.* (quoting *Slankard*, 912 S.W.2d at 624). "'Plain language forecloses speculation about intent of the parties.'" *Id.* (quoting *Slankard*, 912 S.W.2d at 624). "In determining if a contract is ambiguous, we review the terms of a contract as a whole, not in isolation." *City of St. Joseph v. Lake Contrary Sewer Dist.*, 251 S.W.3d 362, 367-68 (Mo. App. W.D. 2008).

"A general release disposes of the entire subject matter involved." *Goldring v. Franklin Equity Leasing Co.*, 195 S.W.3d 453, 456-57 (Mo. App. E.D. 2006). Examples of language that disposes of the entire subject matter involved include: *Blackstock v. Kohn*, 994 S.W.2d 947, 954 (Mo. banc 1999) (finding language releasing parties "from any and all claims, causes of action or liability of any sort whatsoever" and "from any other transaction" between the parties indicated a general release); *Estate of Givens v. U.S. Nat'l Bank of Clayton*, 938 S.W.2d 679, 682 (Mo. App. E.D. 1997) (finding that phrases which have been recognized to be general in nature include: "from any and all liability," "of whatever name or nature" and "and any other matter whatsoever involving my relationship with [the Bank]"). But "[a] general release may not, by its terms, be an unambiguous release when the language of the release, though otherwise broad, appears to limit its application to a specific subject or event." *McIntire*, 399 S.W.3d at 510 n.4. "'[L]anguage, however general in its form, when used in connection with a particular subject-

21

matter, will be presumed to be used in subordination to that matter, and will be construed and limited accordingly.'" *Id.* (quoting *Yeager v. St. Joseph Lead Co.*, 12 S.W.2d 520, 523 (Mo. App. 1929)); *see also Hawes v. O.K. Vacuum & Janitor Supply Co.*, 762 S.W.2d 865, 867-68 (Mo. App. E.D. 1989) (finding that when both general and specific language are contained in a release, "the general language 'will be presumed to have been used in subordination to [the specific], and will be construed and limited accordingly'") (quoting *Holly Inv. Co. v. Land Clearance for Redevelopment Auth. of Kansas City*, 646 S.W.2d 126, 129 (Mo. App. W.D. 1983)).

We find that the release in the workers' compensation case is not a general release of any and all claims arising out of the January 14, 2007 accident. First, to the extent the release contains any "general release" language, that language is used in subordination to the language preceding it, i.e., that Kershaw "is forever closing out this claim under the Missouri Workers' Compensation Law." Second, the release is boiler-plate language in a workers' compensation settlement, indicating that the parties likely did not intend to enter into a general release foreclosing rights regarding matters other than the workers' compensation claim.[17]

Nor is the language of the release broad enough to release any claim Kershaw may have against a third party such as Starr. Missouri courts have recognized many examples of language

---

[17] In *Yerington v. La-Z-Boy, Inc.*, 124 S.W.3d 517 (Mo. App. S.D. 2004), the court addressed whether a stipulation for compromise and settlement of an employee's workers' compensation claim released any civil claims against the employer for retaliatory discharge and constituted accord and satisfaction for the employer. *Yerington*, 124 S.W.3d at 518. Based on the fact that the stipulation in that case included an additional provision not present in this case, the court held that the settlement was ambiguous so as to warrant admission of parol evidence to determine the parties' intent and the meaning of the stipulation. *Id*. at 522. However, in interpreting release language substantially similar to that in the present case, the court found that "[t]he antecedent to the phrase '*this case or claim*' was obviously Plaintiff's claim for benefits caused by this accidental injury as described in [the preceding paragraphs of the stipulation,]" and that other phrases similar to those in Kershaw's stipulation "unmistakably bespeak settlement of Plaintiff's claims for workers' compensation benefits and cannot reasonably be read as including Plaintiff's civil suit for discriminatory discharge." *Id.* at 521. The court concluded that "reasonable people could not fairly and honestly differ about [the release's] meaning. The document, sans amendment, was susceptible of only one reasonable meaning: The stipulation settled and compromised Plaintiff's workers' compensation claim, but left his . . . civil suit unresolved." *Id.* at 522.

that can indicate a general release that releases claims that could be asserted against third parties. *See McIntire*, 399 S.W.3d at 509 (finding that "'[i]f a release states that it releases "all claims" against "any and all persons," or similar language, it may operate as a general release, and effectively extinguish claims against all tortfeasors, even those who were not parties to the release'") (quoting *Lunceford v. Houghtlin*, 170 S.W.3d 453, 460 (Mo. App. W.D. 2005)); *Lunceford*, 170 S.W.3d at 458, 460 (stating that "[c]ourts have routinely held language which releases claims against 'all other persons, firms and corporations' to be unambiguous and enforceable to bar claims against third parties who were not party to the release" and finding that language releasing "all other persons, firms, associations, and corporations of and from any all [sic] actions" was unambiguous and appeared to be general release that would operate to release liability of non-settling alleged tortfeasor); *Slankard*, 912 S.W.2d at 623-24 (finding a release was general where it specifically applied to "all other persons" and released "any and all claims, demands, obligations, actions, and causes of action, whether known or unknown, and whether accrued or yet to accrue . . . ."); *Rudisill v. Lewis*, 796 S.W.2d 124, 127 (Mo. App. W.D. 1990) (finding that language discharging "'all . . . persons and organizations who are or might be liable from all claims for all damages' arising from the accident and cover[ing] 'all my claims arising from said accident, present and future . . . .'" indicated general release); *Ellis v. Reisenbichler*, 712 S.W.2d 468, 469 (Mo. App. E.D. 1986) (finding that language releasing "any other person, firm or corporation charged or chargeable with responsibility for liability . . . from any and all claims" indicated general release); *Liberty v. J.A. Tobin Const. Co., Inc.*, 512 S.W.2d 886, 890 (Mo. App. 1974) (finding that language releasing "all other persons, firms or corporations . . . ." indicated general release). No such language appears in the release at issue in this case. For

23

these reasons, we reject the City's claim that the release Kershaw signed in the workers' compensation case barred his claims in this case.

We reverse the trial court's grant of summary judgment to the City and denial of summary judgment to the Kershaws[18] and remand for further proceedings.

_____
Karen King Mitchell, Judge

Joseph M. Ellis, Presiding Judge, and
Anthony Rex Gabbert, Judge, concur.

---

[18] To clarify, we do not herein grant the Kershaws' motion for summary judgment.